MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**
*** * * ***

CHERIE MANCINI, individually, and FREDERICK GUSTAFSON, as a member and on behalf of CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka SEIU LOCAL 1107, a non-profit cooperative corporation,

Plaintiffs,

vs.

SERVICE EMPLOYEES INTERNATIONAL UNION, a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as trustee; Mary Henry, in her official capacity as International President; DOES; and ROE CORPORATIONS 1-20, inclusive,

Defendants.

CASE NO.:

**PLAINTIFFS' VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

**(TRIAL ON THE MERITS PURSUANT TO FRCP 65 REQUESTED)**

COME NOW, Plaintiffs, by and through their attorney of record, MICHAEL MCAVOYAMAYA, ESQ., and hereby submit this Complaint and allege as follows:

## I. INTRODUCTION

1. This action arises out of Defendants' breach of the Service Employees International Union ("SEIU") Constitution and Bylaws, for failing to follow the procedures outlined in the SEIU Constitution regarding the improper removal of the Local 1107 President, Plaintiff Cherie Mancini, suspension of Ms. Mancini's membership with SEIU, and the imposition of an

emergency trusteeship over Local 1107 that resulted from Ms. Mancini's removal from office in violation of the Labor Management Reporting and Disclosure Act ("LMRDA").

2. SEIU imposed an emergency trusteeship over Local 1107 on April 28, 2017, based on the findings included in the Internal Needs Report and Recommendation produced by SEIU Executive Vice President and hearing officer, Carol Nieters, after a hearing on internal charges lodged against Local 1107 Board members.

3. After the emergency trusteeship was imposed by SEIU on Local 1107, Defendants breached the SEIU Constitution in the following ways: Defendants failed to hold a trusteeship hearing within thirty (30) days of imposition of the emergency trusteeship; failed to notice the membership, including Plaintiff Frederick Gustafson, in a timely fashion regarding the trusteeship hearing; failed to properly notice the Local 1107 membership once the emergency trusteeship hearing was set; failed to issue a decision regarding the merits of the trusteeship within sixty (60) days; denied Local 1107 due process via a full and fair hearing on the merits of the emergency trusteeship; failed to establish a sufficient good faith emergency basis for the imposition of the emergency trusteeship; failed to address good cause for not adhering to the reasonable time periods for these procedures; and failed to address the legitimacy and necessity of continuing the trusteeship at the trusteeship hearing held on July 13, 2017, seventy six (76) days after the emergency trusteeship was imposed.

## II. PARTIES

4. Plaintiff Clark County Public Employees Association, dba Nevada Service Employees Union aka SEIU 1107 (hereinafter "Local 1107"), is, and was at all times relevant herein, a domestic non-profit cooperative corporation, having its main and principal office in Clark County, State of Nevada.

5. Plaintiff Cherie Mancini is, and was at all times relevant herein, the former Local 1107 President and member of Local 1107, and a resident of Clark County, State of Nevada.

6. Plaintiff Frederick Gustafson is, and was at all times relevant herein, a member of Local 1107, and a resident of Clark County, State of Nevada.

7. Defendant SEIU is, and was at all times relevant herein, a nonprofit corporation with headquarters in Washington D.C.

8. Defendant Luisa Blue (hereinafter the "Trustee"), at all times relevant herein, is, and was present in Clark County, State of Nevada.

9. Mary K. Henry (hereinafter "Ms. Henry" or "SEIU President"), on information and belief is a resident of Washington D.C.

10. The true names of DOES 1 through 20, their citizenship and capacities, whether individual, corporate, associate, partnership or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and therefore alleges, that each of the Defendants, designated as DOES 1 through 20, are or may be legally responsible for the events referred to in this action, and caused damages to the Plaintiff, as herein alleged, and Plaintiff will ask leave of this Court to amend the Complaint to insert the true names and capacities of such Defendants, when the same have been ascertained, and to join them in this action, together with the proper charges and allegations.

11. That the true names and capacities of Defendants named herein as DOE Agencies 1 through 20 and ROE CORPORATIONS 1 through 20, inclusive, are unknown to the Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE AGENCIES and/or ROE CORPORATION Defendant is responsible for the events and happenings referred to and proximately caused damages to the Plaintiff as alleged herein. Plaintiff will ask leave of the Court to amend the Complaint to insert the true names and capacities of DOE AGENCIES 1 through 20 and ROE CORPORATIONS 1 through 20, inclusive, when the same have been ascertained, and to join such Defendants in this action.

## III. JURISDICTION AND VENUE

12. The United States District Court, District of Nevada has personal and subject matter jurisdiction over the Defendants and claims as set forth herein pursuant to Title III, § 304 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 464: "Any member or subordinate body of a labor organization affected by any violation of this title (except section 301) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate.

13. 29 U.S.C. § 464 Venue is proper in this Court because Local 1107 operates its principal place of business in Clark County, Nevada.

## IV. ALLEGATIONS COMMON TO ALL CLAIMS

### A. Internal Charges Against Local 1107 Executive Board Members.

14. On September 9, 2016, Local 1107 Executive Vice President Sharon Kisling and Local 1107 Trustee Clara Thomas filed internal charges against Local 1107 President Mancini alleging numerous violations of the SEIU Constitution, which was sent to SEIU President Henry. *See* Assumption of Original Jurisdiction and Notice of Consolidated Hearing, attached as **Exhibit "1,"** at 1; *see also* Kisling v. Mancini (the "Kisling Charges"), 9/9/16, attached as **Exhibit "2,"** at 1. The Kisling Charges alleged that President Mancini violated Article XVII, Section 1(1) – (6) of the SEIU Constitution, and the following provisions of the Local 1107 Constitution: Article 7, Sections 6 and 10A, Article 14, Section 1, and Article 15, Sections 1A(1), (3)-(12) and (16).

15. On September 13, 2016, Local 1107 Vice President Brenda Marzan filed internal charges with SEIU against President Mancini alleging numerous violations of the Local 1107 Constitution. *See* **Exhibit "1,"** at 2; *see also* Marzan v. Mancini (the "Marzan Charges"), 9/13/16, attached as **Exhibit "3,"** at 1. The Marzan Charges alleged that President Mancini violated the following provisions of the Local 1107 Constitution: Article 7, Sections 6A and 6B5, Article 8,

Sections 2B and 2C, Article 11, Section 11C, Article 15, Sections 1(1), 1(3), 1(6) and 2(A), and Article 16, Sections 4, 6, and 10. *Id.*

16. On October 17, 2016, SEIU President Henry assumed jurisdiction over the internal charges lodged against President Mancini, as well as numerous other members of the Local 1107 Executive Board. *See* **Ex. 1,** at 1. The "Assumption of Original Jurisdiction Over Internal Charges [and] Notice of Consolidated Hearing on Internal Charges" (the "Internal Charges Notice") did not contain specific factual allegations regarding the specific provisions of the two Constitutions allegedly breached by Mancini. *Id.* Instead, the Internal Charges Notice deferred to the informal charging letters sent by the charging parties to SEIU President Henry. *Id.* Further, the notice contained no mention that the internal charges hearing would be consolidated with a hearing on the needs of the local pursuant to Article VIII, Section 7(g) of the SEIU Constitution. *Id.*

17. The consolidated internal charges hearing was held on October 29-30, 2016.

18. Six months later, on April 26, 2017, Hearing Officer Carol Nieters issued two Reports and Recommendations relating to the internal charges hearing that was held the year prior. *See* Internal Charges Report and Recommendation, attached as **Exhibit "4,"** at 1; *see also* Internal Needs Report and Recommendation, attached as **Exhibit "5,"** at 1.

**B. <u>Nieters' Internal Charges Report and Recommendation.</u>**

19. Hearing Officer Nieters' Internal Charges Report and Recommendation ("ICRR") sustained several charges against President Mancini and Executive Vice President Sharon Kisling, and recommended that they be removed from their respective board positions at Local 1107. *See* **Ex. "4,"** at 26-27.

20. Nieters states in the ICRR that she focused the report on the allegations that arose to "serious breaches of duty, and I do not discuss separately each and every conclusory statement or minor allegation":

> I do not separately address charges which, even assuming them to be true, reflect poor administrative practices, mere differences in opinion, or possibly a culture of disrespectful treatment. These may represent less than best practices, but I do not find that they rise to the level of "gross inefficiency" or "failure to perform duties" within the meaning of the SEIU or Local 1107 Constitutions and Bylaws, nor do they constitute cognizable charges thereunder. Illustrative examples in Sister Mancini's case include allegations of failing to prepare for or conduct Executive Board meetings to the satisfaction of Charging Parties (e.g., Tr. 1 at 35-37); failing to adopt or advance recommendations from advisory committees like the Staff Hiring Committee (e.g., Tr. 1 at 127-29) . . .

*Id.* at 6-7.

21. Hearing Officer Nieters sustained only two of the alleged charges against President Mancini: (1) disregard of Board's authority regarding staff and contracts under Article 8, Section 2(C) of the Local 1107 Constitution; and (2) derogation of duty to officers and bargaining committee members under Article 7, Section 6(B)(5), and Article 16, Sections 4 and 6 of the Local 1107 Constitution, and Article XVII, Section 1(3) of the SEIU Constitution, relating to her temporary postponement of a ratification vote for a recently negotiated collective bargaining agreement ("CBA"). *Id.* at 26. The CBA was ratified in the time originally allotted for the ratification vote, and Local 1107 has met its duties under the CBA. *Id.* at 14-15 ("she unilaterally reduced the proposed three-day voting period to a single day. . . Ultimately, Sister Mancini restored the ratification vote, and the agreement was approved by the members").

22. As to the first sustained charge, Hearing Officer Nieters recommended only a leadership development training course because the charges were not serious in nature, conflicting provisions of the Local 1107 Constitution could have led her to believe she was within her constitutional authority, and Mancini was not solely responsible for the "breakdown in governance." *Id.* at 10-11.

23. As to the second sustained charge, Nieters recommended that Ms. Mancini be removed from her position as Local 1107 President and that her membership with SEIU be suspended for six (6) months. Executive Vice President Kisling was also removed from office. *Id.*

//

//

### C. Nieters' Internal Needs Report and Recommendation.

24. Hearing Officer Neiters also issued a second Report and Recommendation on "The Internal Needs of SEIU Local 1107" ("INRR"). *See* **Ex. "5,"** at 1.

25. Nieters asserted that the report was made pursuant to the SEIU Constitution Article VIII, Section 7(g). *Id.* Nieters recommended that, based on the evidence presented at the hearing six months prior, "immediate intervention in the Local – ideally in the form of an International Union trusteeship – is necessary to assure the performance of Local Union collective bargaining duties and functions, restore effective democratic procedures in the Local, protect the interests of the Local and the membership, and otherwise carry out the legitimate objects of the International Union." *Id.* at 13. Neiters further found that:

> It is clear from the testimony and evidence presented at the internal needs and the internal charges hearings that Local 1107 has suffered a breakdown in internal union governance and democratic procedures that has interfered with its ability to serve its members and properly negotiate and enforce its collective bargaining agreements. Without immediate intervention, the Local Union will remain in crisis at the expense of its membership. ***Because the circumstances as they were presented to me at the hearing fully justify the imposition of an emergency trusteeship***, I recommend that President Henry consult with counsel and consider that course of action.

*Id.* at 2 (emphasis added)

26. That same day, April 26, 2017, SEIU President Henry sent out a letter to Local 1107's board members informing them that she was invoking her power as the International Union's President to remove Ms. Mancini and Ms. Kisling from their positions as President and Executive Vice President of Local 1107, pursuant to the International Union Constitution Article XVII, Section 2(f). Ms. Henry further informed the members that she was sending "International Executive Vice President Neal Bisno and Deputy Chief of Staff Deedee Fitzpatrick to attend Local 1107's Executive Board meeting" scheduled that evening, April 26, 2017. *See* Henry Letter, attached as **Exhibit "6,"** at 2. No mention of the imposition of an emergency trusteeship was included in the letter. *Id.*

27. On the evening of April 26, 2017, the Board of Local 1107, at the request of the SEIU officials, met in a closed session with Mr. Bisno, Mr. Fitzpatrick, and the International's Associate General Counsel Steve Ury, forcing all non-Executive Board members of Local 1107 to leave the monthly meeting. Further, due to lack of notice of the hearing, only 29 of the more than 40 Board members were present. Mr. Ury incorrectly advised the Local 1107 Board that because Local 1107's Constitution did not contain provisions for what to do in the event that the President and Vice President positions were simultaneously vacant, they had no choice other than to request SEIU place them into a Trusteeship. Believing there was no other option than to move forward, the Board voted to request that the International Union place Local 1107 into Trusteeship. *See* Member Emails and Affidavits, attached as **Exhibit "7 a-c."**

28. On April 28, 2017, Ms. Henry entered and disseminated an "Order of Emergency Trusteeship" to Local 1107 "[p]ursuant to [her] authority under Article VIII, Sections 7(a) and 7(f), of the SEIU Constitution and Bylaws." *See* Trusteeship Order, attached as **Exhibit "8,"** at 1.

29. On May 28, 2017, the SEIU President breached the SEIU Constitution by failing to hold a trusteeship hearing within thirty days of appointment of the trustee.

30. On June 27, 2017, the Defendants breached the SEIU Constitution by failing to issue a decision from the SEIU Executive Board regarding the need for the trusteeship.

31. On July 3, 2017, at 4:20 p.m., Defendants issued notice of a trusteeship hearing less than ten (10) days before the hearing was to be held, over a holiday weekend, which contained unreasonable restrictions on Plaintiffs' right to a fair hearing.

32. On July 13, 2017, an emergency trusteeship hearing was held. The Local 1107 members were denied the right to be represented, the right to submit evidence, to call witnesses, and to cross-examine Defendants' witnesses.

**<u>FIRST CAUSE OF ACTION</u>**

**(Mancini – improper notice of specific charges LMRDA Title I, § 101, 29 U.S.C. § 411(5))**

33. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

34. LMRDA Title I, § 101, 29 U.S.C. § 411(5) provides that: “No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.” 29 U.S.C. § 411(5).

35. Article XVII, Section 2 of the SEIU Constitution states that “The charges must specify the events or acts which the charging party believes constitute a basis for charges and must state which subsection(s) of Section 1 of this Article the charging party believes has been violated. If the charges are not specific, the trial body may dismiss the charges either before or at the hearing, but the charging party shall have the right to refile more detailed charges which comply with this Section. No charges may be filed more than six months after the charging party learned, or could have reasonably learned, of the act or acts which are the bases of the charges.” *See* SEIU Constitution, attached as **Exhibit “9,”** at 37.

36. On October 17, 2016, SEIU President Henry disseminated notice that she was asserting jurisdiction over the charges against the Local 1107 Board Members, including Plaintiff Mancini. *See* **Ex. “1,”** at 1. The Internal Charges Notice was not served upon Mancini “personally or by registered or certified mail” pursuant to the SEIU Constitution, Article XVII, Section 3. *See* **Ex. 9,** at 37.

37. Further, the notice did not include any of the specific factual allegations against Mancini that SEIU found were credible and related to the enumerated sections of the SEIU and Local 1107 Constitutions. *Id.* Rather, the Notice included the informal charging documents sent to SEIU President Henry by the charging board members. The majority of the factual allegations

contained in the informal charging documents are irrelevant, and were not even addressed by Nieters in the ICRR because they were dismissed as not cognizable. *See* **Ex. 4,** at 26-27.

38. Only the first three bullet points in the Marzan Charges were sustained against Mancini and used to remove her from office under: Article 7, Section 6(B)(5), and Article 16, Sections 4 and 6, and Article 21, Section 3(3) of the Local 1107 Constitution. *See* **Ex. 3,** at 1; *see also* **Ex. 4,** at 16.

39. The Marzan Charges did not include allegations for a violation of Article 21, Section 3(3) of the SEIU Constitution for "[g]ross disloyalty or conduct unbecoming a member." Despite not being alleged, Nieters sustained the violation of Article 21, Section 3(3) regarding the UMC CBA. *Id.*

40. The factual allegations in the Marzan Charges also did not allege a breach of Article 16, Section 4 relating to the UMC collective bargaining agreement sustained by Hearing Officer Nieters. Rather, the Marzan Charges alleged that "President Mancini violated [Article 16, Section 4] of the Constitution and Bylaws by not informing or allowing the members of Clark County to participate in the Settlement Agreement signed by President Mancini on August 13, 2016," a charge which was subsequently dismissed by Nieters after the hearing. *See* **Ex. 3,** at 1; *see also* **Ex."4,"** at 26-27.

41. Further, the charges themselves allege that "President Mancini was unaware of the status of negotiations ***even though the officers gave status updates during the executive board meetings and that UMC employees/members received joint UMC management/SEIU bargaining team updates with contract language and photos of the mutually interest based bargaining boards put out through employer email after every bargaining session***." *See* **Ex. 3,** at 1 (emphasis added.)

42. The Marzan charges allege that "President Mancini's lack of participation in the UMC bargaining process" was a violation of Article 7, Section 6, and Article 16, Section 6. *Id.* However, participating in the negotiations with employers themselves is not expressly required by the Local Constitution, and Article 16, Section 6 provides that "[t]he Local President, **or designee**, shall be the chief spokesperson for this Local Union in all collective bargaining with any employer." *See* Local 1107 Constitution, attached as **Exhibit "10,"** at 47 (emphasis added.)

43. Nieters also acknowledged in the ICRR that "[t]he evidence was conflicting on whether and when Sister Mancini attempted to exercise her constitutionally mandated role on the bargaining committee. She may have made some early, if unavailing, efforts to participate, but the credible evidence suggests that she was ***largely absent from the negotiations that took place on a regular basis between March and July 2016.***" *See* **Ex. 4,** at 13 (emphasis added.) Again, nothing in the Local 1107 Constitution mandates that the President take part in every collective bargaining negotiation with employers, and permits the President to designate a spokesperson for such negotiations, which she did. *Id.*

44. According to Nieters, the "most critical[]" issue that led to Ms. Mancini's removal from office occurred after the UMC negotiations had concluded. Specifically, Ms. Nieters states that Mancini "unilaterally reduced the proposed three-day voting period to a single day." *Id.* at 14. This statement is misleading, however, as the ICRR and the Marzan Charges both reference a bulletin that was posted on the SEIU website stating that the post-negotiation ratification vote was cancelled because Local 1107 was "investigating allegations against members of the bargaining team," and that "[i]n the interest of transparency, accountability, to share the most recent information and gather member input, the Union will be holding meetings on Thursday, July 28 at 8 a.m. to 10 a.m., 4 p.m. to 6 p.m. and 7 p.m. to 9 p.m. at the Union Hall." *See* **Ex. 3,** at 5.

45. The allegations referred to in the bulletin were not made by Mancini, but rather, were alleged by nursing staff members of UMC who were concerned about the lack of transparency of the UMC Collective Bargaining Unit, that the terms of the new CBA benefited the stewards on the Unit at the expense of the membership, and that the agreement included a term that reduced "the union's access to UMC workers." *See* UMC Nurses Letter in Support of Mancini Appeal, attached as **Exhibit "11,"** at 1; *see also* Member Text Message to Mancini, 7/29/16, attached as **Exhibit "12,"** at 1 ("This contract is awful!! Is there anyway to go back to the drawing board? Can those of us with concerns meet with you before Monday?").

46. Nieters did not find Mancini's cancelation of the ratification vote improper. *See* **Ex. 4,** at 15 ("As a union leader, I am **enormously sympathetic to Sister Mancini's concern**. Access is a vital issue for unions. **I can appreciate her strong reaction to the reduction in access her bargaining committee members accepted**").

47. What Ms. Nieters found was a violation of Mancini's duty as President was not the cancelation of the ratification vote itself, but rather "her precipitous cancelation of the ratification vote **directly through the employer**, without even communicating with the bargaining committee," because it "effectively circumvented the democratic process set in place by the Constitution, which vests the authority to negotiate in the bargaining committee." *Id.*

48. Nieters recommended Mancini's removal from office and suspension because of her "broadcast [of] unfounded, disloyal, and derogatory accusations against members of the committee. This course of conduct, demonstrating a derogation of the democratic process and a lack of presidential leadership and temperament, does warrant disciplinary measures." *Id.* at 16 ("for her disloyal and conduct unbecoming an officer in violation of Article 21, Section 3[3], I recommend that Sister Mancini be removed from her position as president of Local 1107 effective

immediately and barred from holding office in SEIU for a period of one (1) year. In addition, she should be suspended from membership in Local 1107 for a period of six (6) months").

49. However, neither the Internal Charges Notice, nor the informal charging documents contain factual allegations or references to a violation of Article 21, Section 3 of the Local 1107 Constitution. *See* **Ex. 2;** *see also* **Ex. 3;** *see also* **Ex. 4.** Further, Article 21, Section 3(3) of the Local Constitution states "[g]ross disloyalty or conduct unbecoming a member." *See* **Ex. 10,** at 56. This provision does not permit a President to be charged with disloyalty to the members of a collective bargaining unit, especially when the actions taken were at the request of members of the unit, and there is no charge for conduct unbecoming an officer in the SEIU and Local Constitutions. *Id.*

50. Without proper notice of what specific factual allegations would be heard, and to which specific provisions of the Local 1107 Constitution they were related, Mancini could not know what charges and alleged conduct to defend herself against at the hearing.

51. Defendants' failure to properly notice Ms. Mancini of the specific factual allegations and specific charges against her denied Ms. Mancini her right to prepare a defense and receive a full and fair hearing under the LMRDA Title I, § 101, 29 U.S.C. § 411(5) constituting a denial of due process.

52. As a result of Defendants' denial of a full and fair hearing regarding the charges against her, Defendants have improperly disciplined Mancini by removing her from office and suspending her membership for six (6) months. *Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local No. 287*, 175 F.3d 680, 686 (9th Cir. 1999) ("We note, however, that union officers, like union members are protected by the LMRDA against discipline that affects their rights as union members").

53. Mancini has filed an appeal to the SEIU Executive Board, from which she has not received a response. However, a Trusteeship Hearing was held in Las Vegas, NV, on July 13, 2017, which went into detail regarding the supposed merits of her removal as Local 1107 President: "Former President Mancini and former [Executive Vice President] Kisling have lost their status as SEIU members, but Hearing Officer Verrett will exercise her discretion to give them an opportunity to participate in the hearing, in light of the overall facts and circumstances surrounding this trusteeship and their membership status." *See* Notice of Trusteeship Hearing, 7/3/17, attached as **Exhibit "13,"** at 3.

54. Because Mancini's pending appeal to address her improper discipline would constitute a third hearing on the matter, pursuing the appeal would be futile, and because of Defendants' consistent position against her, exhaustion of additional internal remedies is not required. *Amalgamated Clothing Workers Rank & File Comm. v. Amalgamated Clothing Workers, Philadelphia Joint Bd.*, 473 F.2d 1303, 1308 (3d Cir. 1973) ("Exhaustion has not been demanded . . . when resort to the internal appeals structure would be futile, *Steib v. New Orleans Clerks & Checkers, Local No. 1497*, 436 F.2d 1101 (C.A. 5, 1971); or when the union has consistently taken a position opposed to plaintiff and shows no inclination to change its views").

55. Plaintiff Mancini is entitled to an order enjoining Defendants' illegal actions in violation of the SEIU and Local 1107 Constitutions and the LMRDA 29 U.S.C. § 411, including immediate reinstatement of her membership with SEIU and her position as Local 1107 President, and a permanent injunction barring SEIU from continuing to control Local 1107 via emergency trusteeship.

//

//

**SECOND CAUSE OF ACTION**
**(Mancini - Discipline for engaging in protected speech in violation of LMRDA Title I § 101, 29 U.S.C. § 411(2))**

56. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

57. LMRDA Title I, § 101, 29 U.S.C. § 411(2) provides: "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

58. From the "judicial evolution of the scope of the LMRDA free speech protection, a general rule is perceivable: a union member has the statutory right 'to express any views, arguments, or opinions' inside or outside of a union meeting, subject to only three general limitations: (1) reasonable union rules relating to the conduct of union meetings; (2) reasonable rules relating to individual responsibility to the union as an institution; and (3) reasonable rules requiring members to refrain from conduct which would interfere with the union's performance of its legal or contractual obligations." *Fulton Lodge No. 2 of International Asso. of Machinists & Aerospace Workers v. Nix*, 415 F.2d 212, 218 (5th Cir. 1969).

59. Article 15, Section 1(A)(13) of the Local 1107 Constitution states that the President has a duty to "[p]ublish the Local Union newspaper and regular membership communications." *See* **Ex. 10,** at 44.

60. Article 16, Section 6 of the Local 1107 Constitution states that "[t]he Local President, or designee, shall be the chief spokesperson for this Local Union in all collective bargaining with any employer." *Id.* at 47.

61. Mancini, as President of Local 1107, had a duty to publish membership communications and was permitted to speak with employers regarding collective bargaining under the Local 1107 Constitution. Nothing in the Local Constitution bars or limits a President from broadcasting "accusations against the members of a committee" to Local 1107 members via the Local 1107 website or facebook account, nor does it preclude a President from communicating directly with an employer about the possible cancelation of a ratification vote due to allegations of member employees.

62. Further, no contractual duties were interfered with as a result of the postponement of the ratification vote.

63. Finally, the Local 1107 constitution contains no rules barring the President from canceling a post-negotiation ratification vote based on concerns of union members.

64. Communications inside and outside of the union that criticize union officers, or allegations of corruption within the governing body of a union, "are protected from union action even if libelous." *Semancik v. United Mine Workers*, 466 F.2d 144, 153 (3d Cir. 1972).

65. Nieters acknowledged that Mancini temporary suspension of the UMC ratification vote was done genuinely to protect Local 1107 members, as "[a]ccess is a vital issue for unions," and did "not warrant the serious discipline sought by the Charging Parties" of removing her from office. *See* **Ex. 4,** at 15.

66. Defendants took disciplinary action against Mancini, removing her from her position as Local 1107 President and suspending her membership because "[s]he further abused

her power of her office ***to make and broadcast unfounded, disloyal, and derogatory accusations against the members of the committee***," which constitutes protected speech under LMRDA Title 1, § 101, 29 U.S.C. § 411(2), supposedly in violation of a charge that was never properly noticed to her prior to the hearing. It is not necessary under 29 U.S.C. § 411(a)(2) that violation of union member's exercise of his free speech right be primary cause of removal from office, discharge or discipline, it is illegal merely if violation of constitutional right was one cause of that discharge or discipline. *Bradford v. Textile Workers of America,* 563 F.2d 1138, 1143 (4th Cir. 1977).

67. Mancini filed an appeal to the SEIU Executive board, from which she has not received a response. However, a Trusteeship Hearing was held in Las Vegas, NV, on July 13, 2017, which went into detail regarding the supposed merits of her removal as Local 1107 President: "Former President Mancini and former [Executive Vice President] Kisling have lost their status as SEIU members, but Hearing Officer Verrett will exercise her discretion to give them an opportunity to participate in the hearing, in light of the overall facts and circumstances surrounding this trusteeship and their membership status." *See* **Ex. 13,** at 3.

68. Because Ms. Mancini's pending appeal to address her improper discipline would constitute a third hearing on the matter, pursuing the appeal would be futile, and because of Defendants' consistent position against her, exhaustion of additional internal remedies is not required. *Amalgamated Clothing Workers Rank & File Comm. v. Amalgamated Clothing Workers, Philadelphia Joint Bd.*, 473 F.2d 1303, 1308 (3d Cir. 1973) ("Exhaustion has not been demanded . . . when resort to the internal appeals structure would be futile, *Steib v. New Orleans Clerks & Checkers, Local No. 1497*, 436 F.2d 1101 (C.A. 5, 1971); or when the union has consistently taken a position opposed to plaintiff and shows no inclination to change its views").

69. Plaintiff Mancini is entitled to an order enjoining Defendants' illegal actions in violation of the SEIU and Local 1107 Constitutions and the LMRDA, 29 U.S.C. § 411(2), including immediate reinstatement of her membership with SEIU and her position as Local 1107 President, and a permanent injunction barring SEIU from continuing to control Local 1107 via trusteeship.

## THIRD CAUSE OF ACTION

**(Breach of the SEIU Constitution Article VIII, Section 7(f) – Failure to Notice that the Need of Imposing a Trusteeship would be Considered at the Consolidated Internal Charges Hearing in Violation of LMRDA Title III, § 304, 29 U.S.C. § 462, 464)**

70. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

71. 29 U.S.C. § 462 provides that "Trusteeships shall be established and administered by a labor organization over a subordinate body **only** in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

72. 29 U.S.C. § §464(c) provides, in pertinent part, that "In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws ***and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid*** for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302 [29 USCS § 462]."

73. Article VIII, Section 7(f) of the SEIU Constitution requires a hearing on the merits of a trusteeship be held before appointment of a trustee except in an emergency, at which point a emergency trusteeship hearing must be held within thirty (30) days, and a decision on the merits be issued by the SEIU Executive Board within sixty days (60) on the need of continuing the trusteeship. *See* **Ex. 9,** at 20.

74. Article VIII, Section 7(g) of the SEIU Constitution permits the SEIU President to send a representative to meet with the local and attend meetings to determine the internal needs of the local union, and appoint a hearing officer to assess the internal needs of a local. *Id.* Article VIII, Section 7(g) does not permit the International President to use an internal charges hearing as a hearing on the internal needs of a union to circumvent the requirements of Section 7(f), which require a trusteeship hearing be held prior to the imposition of a trusteeship. *Id.*

75. On October 17, 2016, Defendants issued notice of "Assumption of Original Jurisdiction Over Internal Charges, Notice of Consolidated Hearing on Internal Charges, Appointment of Hearing Officer and Rules of Procedure" to Local 1107 regarding the charges against the Local 1107 Board members. *See* **Ex. 1,** at 1. The Notice contains no reference to the hearing also being consolidated with a hearing on "the internal needs of Local 1107 pursuant to . . . Article VIII, Section 7(g) of the SEIU Constitution and Bylaws." *Id.*; *see also* **Ex. 4,** at 1.

76. Defendants failed to notice the Local 1107 membership that the Consolidated Internal Charges Hearing would also address the internal needs of Local 1107 pursuant to Article VIII, Section 7(g) of the SEIU Constitution, and also failed to inform Local 1107 that a trusteeship would be discussed and could be recommended as an internal need of Local 1107.

77. Despite failing to properly notice Local 1107 that the imposition of an emergency trusteeship would be considered at the internal charges hearing, six months after the hearing was

held, Nieters issued a separate INRR recommending that "[b]ecause the circumstances as they were presented to me at the hearing ***fully justify the imposition of an emergency trusteeship***, I recommend that President Henry consult with counsel and consider that course of action." *See* **Ex. 5,** at 2. Nieters never met with the officials of Local 1107, never attended meetings, and no notice of the internal needs hearing was ever sent to Local 1107.

78. Further, SEIU Constitution Article VIII, Section 7(f) provides the procedure to be followed when imposing a trusteeship on a local, including the need for an emergency trusteeship. Article VIII, Section 7(g) being included in a separate section of Article VIII indicates that they are separate sections and cannot be utilized to circumvent the procedural requirements of the Section 7(f) requiring a hearing to be held on the need for appointing a trustee before the trustee is appointed.

79. Defendants' failure to establish and administer the trusteeship over Local 1107 in accordance with the SEIU Constitution and By Laws is a violation of the LMRDA, Title III, § 302 29 U.S.C. § 462.

80. Defendants' failure to administer the trusteeship in accordance with the SEIU Constitution and Bylaws destroys the presumption of validity of the trusteeship. 29 U.S.C. § 464.

81. Defendants retroactively asserting that the Consolidated Internal Charges Hearing was also a hearing on the internal needs of Local 1107 pursuant to Article VIII, Section 7(g), and then using Section 7(g) to circumvent the procedural requirements of Section 7(f) requiring a full and fair hearing before a trusteeship is imposed is clear and convincing evidence that the trusteeship was not imposed for a good faith purpose.

82. Defendants retroactively asserting that an emergency situation exists six (6) months after they learned of the supposed emergency situation in order to circumvent the procedural

requirements of Section 7(f) requiring a hearing be held before a trusteeship is imposed is clear and convincing evidence that the trusteeship was not imposed for a good faith purpose.

83. Due to the Defendants' failure to comply with the procedures outlined in the SEIU Constitution for the imposition of an emergency trusteeship in violation of 29 U.S.C. § 462, and 464, and Plaintiffs' high likelihood of success on the merits, Plaintiffs are entitled to injunctive relief ending the trusteeship, and for costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(LMRDA Title VIII, § 302, 29 U.S.C. § 462 – Imposition and Maintenance of Emergency Trusteeship for an improper purpose)**

84. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

85. 29 U.S.C. § 462 provides that "Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of [1] correcting corruption or financial malpractice, [2] assuring the performance of collective bargaining agreements or other duties of a bargaining representative, [3] restoring democratic procedures, or [4] otherwise carrying out the legitimate objects of such labor organization."

86. Hearing Officer Nieters does not express a specific emergency situation necessitating the need for immediate intervention into Local 1107's affairs, instead simply stating that "[w]ithout immediate intervention, the Local Union will remain in crisis at the expense of membership. Because the circumstances as they were presented to me at the hearing fully justify the imposition of an emergency trusteeship, I recommend that President Henry consult with counsel and consider that course of action." *See* **Ex. 5,** at 2.

87. However, Nieters fails to demonstrate specific instances of conduct that properly justify imposition of a trusteeship, let alone the need for emergency intervention without first holding a hearing within the six (6) month period between the Internal Charges Hearing on October 29-30, 2016, and dissemination of the reports and recommendations used to justify imposition of the emergency trusteeship.

88. Ms. Nieters fails to provide any examples of Local 1107 not finishing its business. Nieters lists two specific instances of business not being completed: (1) financial reports were not reviewed or approved at an October 2016 board meeting (**Ex. "5,"** at 3); (2) "the August 31, 2016 Meeting was not adjourned by motion, rather it dissipated and collapsed due to what the minutes describe as 'situations.'" *Id.* at 4.

89. The Local 1107 financial reports were reviewed, approved and submitted to the Secretary of Labor in a timely fashion, and failure to adjourn a meeting on motion is not a legitimate example of a breakdown of the democratic process sufficient to warrant imposition of a trusteeship. *See* 2016 Financial Report, 3/31/17, attached as **Exhibit "14."**

90. Nieters also argues that "[t]he leadership conflicts in the Local are the root of a pattern of instability and uncertainty that interferes with Local 1107's ability to carry out its most basic collective bargaining responsibilities properly and effectively." *See* **Ex. 5,** at 4. However, Nieters could not provide a single example of a collective bargaining responsibility not being met. Rather, she cites that President Mancini's postponement of the UMC CBA ratification vote as an example of Local 1107 failing to meet its basic collective bargaining responsibilities. *Id.* The UMC CBA was ratified on July 29, 2016, within the time period originally requested. There was no delay in ratification of the UMC CBA, there was no disruption in ratification, and Local 1107

has consistently met all collective bargaining obligations during Mancini's tenure as President of Local 1107.

91. Nieters also argues that "a wider communication breakdown in the Local has interfered with the ability of members and leaders to carry out their collective bargaining duties properly." *Id.* at 5. Again, Nieters fails to list a single example of a CBA being breached, threated to be breached, or any CBA not being ratified in the time prescribed.

92. Nieters argues that "[t]he record also shows that inadequate communication has caused confusion and impeded staff oversight." *Id.* at 7. Again, Nieters does not provide a single example of work not getting accomplished, and instead focuses on conflicting tasks given to Local 1107 employees. The Local 1107 staff is not part of the governing body of Local 1107, thus any issues with communication with staff members has no effect on democratic procedures of Local 1107.

93. Nieters argued that "[a]s detailed in my Report on the internal union charges, Sister Kisling violated the Local Union Constitution by usurping President Mancini's authority to hire and fire Local staff when she attempted to terminate a Local staff person while the President was on vacation." *Id.* While this allegation may be true, it does not demonstrate a breakdown in democratic governance, and the appropriate course of action was removing Kisling from her position as Executive Vice President of Local 1107. A board member trying to fire staff is outside the scope of permissible reasons to impose a trusteeship pursuant to 29 USC § 462.

94. Conflicting provisions of a Local Constitution is outside the scope of permissible reasons to impose a trusteeship pursuant to 29 U.S.C. § 462. "Congress recognized that the imposition of a trusteeship is an extraordinary intrusion into the affairs of a local union. Such a step should not be taken without a prior hearing, absent some necessity for immediate action."

*Hotel & Restaurant Employees & Bartenders International Union v. Rollison*, 615 F.2d 788, 792 (9th Cir. 1980).

95. Defendants did not administer the emergency trusteeship on Local 1107 in accordance with the SEIU Constitution, nor for any legitimate purpose delineated in LMRDA Title III, § 302, 29 U.S.C. 462, and are thus not entitled to a presumption of validity.

96. Defendants' failure to administer and maintain the trusteeship over Local 1107 in accordance with the SEIU Constitution and By Laws and for a legitimate purpose is a violation of the LMRDA, Title III, § 302 29 U.S.C. § 462, 464.

97. Due to the Defendants' failure to comply with the procedures outlined in the SEIU Constitution for the imposition of an emergency trusteeship, failure to administer the trusteeship for a legitimate purpose is a violation of 29 U.S.C. § 462, and Plaintiffs' high likelihood of success on the merits, Plaintiffs are entitled to injunctive relief ending the trusteeship, and for costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**(LMRDA Title VIII, § 302, 29 U.S.C. § 462, 464 - Bad Faith Imposition, and Maintenance of Emergency Trusteeship)**

98. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

99. That pursuant to the SEIU Constitution, the President was required to appoint a hearing officer and issue timely notice to the Local 1107 membership before the imposition of a trusteeship unless the President determines that an "emergency situation exists within the Local Union." *See* **Ex. 9,** at 21.

100. That Defendants failed to notice the Local 1107 membership that the Consolidated Internal Charges Hearing would also address the internal needs of Local 1107 pursuant to Article

VIII, Section 7(g) of the SEIU Constitution, and also failed to inform Local 1107 that a trusteeship would be discussed and could be recommended as an internal need of Local 1107.

101. That despite failing to properly notice Local 1107 that a trusteeship would be considered at the internal charges hearing, six months after the hearing was held, Nieters issued a separate INRR recommending that "[b]ecause the circumstances as they were presented to me at the hearing ***fully justify the imposition of an emergency trusteeship***, I recommend that President Henry consult with counsel and consider that course of action." *See* **Ex. 5,** at 2 (emphasis added.)

102. That Defendants can provide no explanation for why they waited six (6) months to impose an emergency trusteeship when the supposed emergency situation existed on October 30, 2016. Defendants' failure to impose the emergency trusteeship until six (6) months after they were informed of the supposed emergency situation is clear and convincing evidence of bad faith. *International Bhd. of Teamsters, Local Union 107 v. International Bhd. of Teamsters*, 935 F. Supp. 599, 603 (E.D. Pa. Aug. 20, 1996).

103. That Defendants can provide no explanation why a trusteeship hearing pursuant to Article VIII, Section 7(f) of the SEIU Constitution could not have been held within the six (6) month time period they waited to issue the report and recommendation to place Local 1107 into emergency trusteeship, and failure to hold a trusteeship hearing in the six (6) months between the internal charges hearing and imposition of the emergency trusteeship is clear and convincing evidence of bad faith. *Id.*

104. That Defendants can provide no explanation why they issued a ruling on the need for an emergency trusteeship, which related to a hearing held six (6) months prior, without properly noticing Local 1107 that trusteeship could be recommended as a an internal need of Local 1107.

Failure to properly notice Local 1107 that the internal charges hearing would address the need of an emergency trusteeship is clear and convincing evidence of bad faith.

105. That Defendants retroactively asserted that the Consolidated Internal Charges Hearing was also a hearing on the internal needs of Local 1107 pursuant to Article VIII, Section 7(g). **Ex. 5,** at 1; *see also* **Ex. 1,** at 1.

106. That Defendants retroactively utilized Article VIII, Section 7(g) of the SEIU Constitution in Nieters INRR with the intent to circumvent the procedural requirements of Article VIII, Section 7(f), which require a hearing be held before a trusteeship is imposed. Defendants' utilization of Section 7(g) to circumvent the procedural requirements of Section 7(f) is clear and convincing evidence that the emergency trusteeship was not imposed in good faith.

107. That Defendants retroactively asserting that an emergency situation exists six (6) months after they learned of the emergency situation in order to circumvent the procedural requirements of Article VIII, Section 7(f) of the SEIU Constitution requiring a hearing be held before a trusteeship is imposed is clear and convincing evidence that the trusteeship was not imposed in good faith.

108. That on April 28, 2017, SEIU President Henry disseminated a trusteeship order placing Local 1107 into trusteeship, which failed to assert a good faith emergency situation necessitating the imposition of an emergency trusteeship before a hearing could be held. *See generally* **Ex. 8.**

109. That the Trusteeship Order stated that "[c]onsistent with the requirements of Article VIII, Section 7(f) of the SEIU Constitution, I will request that the International Executive Board appoint a hearing officer and that a notice of hearing be issued in the near future. Pursuant to that provision of the SEIU Constitution, a hearing regarding the SEIU's imposition of an emergency

trusteeship over Local 1107 shall be held within thirty (30) days from the imposition of this trusteeship." *Id.* at 3.

110. That Defendants failed to notice and hold the trusteeship hearing within thirty (30) days of the imposition of the emergency trusteeship pursuant to the SEIU Constitution and the Trusteeship Order.

111. That on June 7, 2017, a hearing regarding the removal of a law suit filed by Local 1107 members against SEIU to invalidate the emergency trusteeship, which was originally plead in state court and under Nevada law for breach of the Local 1107 Constitution and the Affiliation Agreement, was held before Judge Andrew Gordon in the United States District Court District of Nevada. *See* Removal Hearing Transcript, attached as **Exhibit "15,"** at 1.

112. That during this hearing Judge Gordon informed defense counsel that the thirty (30) day period to hold the trusteeship hearing had expired, and the parties agreed that the hearing had not been held in accordance with the SEIU Constitution and Trusteeship Order. *Id.* at 71:8-25. Defense counsel for SEIU stated that he assumed that SEIU President Henry had extended the hearing past the thirty (30) days because a hearing had not yet been held. *Id.*

113. That almost a month later, on July 3, 2017, the day before a holiday weekend and sixty six (66) days after imposition of the trusteeship, Defendants issued an untimely Notice of Trusteeship Hearing. *See* **Ex. 13,** at 1. The Notice of Trusteeship Hearing retroactively asserted that the International President had found good cause to postpone the hearing two weeks before the hearing before Judge Gordon when defense counsel was apprised of the fact that the thirty (30) day window had passed:

> On May 25, 2017, under her express authority under Article VIII, Section 7(f) of the SEIU Constitution, the International President determined that good cause existed to hold the Local 1107 trusteeship hearing more than 30 days after the imposition of the trusteeship- in light of Local 1107's pending commitments and

> the schedules of the individuals whose attendance at the hearing was necessary. The International President also determined that good cause existed for the International Executive Board's decision on the trusteeship to be made more than 60 days after the trusteeship was imposed.

*Id.* at 2.

114. That Defendants have provided no explanation as to what good cause warranted postponing the hearing, nor why notice was not sent to Local 1107 in a timely fashion regarding good cause to postpone the trusteeship hearing. Retroactively sending out a notice that the International President found good cause to postpone the trusteeship hearing after their counsel was informed by Judge Gordon that the thirty (30) day window had passed is clear and convincing evidence of bad faith.

115. That on July 13, 2017, seventy-six (76) days after the appointment of the Trustee, the emergency trusteeship hearing was held, and Defendants again failed to establish a good faith emergency situation necessitating the imposition and continuation of the emergency trusteeship, and failed to establish good cause for not holding the hearing within thirty (30) days after the trustee was appointed pursuant to the SEIU Constitution.

116. Defendants' failure to establish and administer the trusteeship over Local 1107 in accordance with the SEIU Constitution and Bylaws, and failure to hold a full and fair hearing to authorize the trusteeship over Local 1107 is a violation of the LMRDA, 29 U.S.C. § 464 that eliminates the presumption of validity of the trusteeship.

117. Due to the Defendants' failure to comply with the procedures outlined in the SEIU Constitution for the imposition of an emergency trusteeship in violation of 29 U.S.C. § 462, and 464, the clear and convincing evidence that the trusteeship was administered and maintained in bad faith, and Plaintiffs' high likelihood of success on the merits, Plaintiff is entitled to injunctive

relief ending the trusteeship, and for costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**

**(Breach of the SEIU Constitution Article VIII, Section 7(f) – Failure to Hold an Emergency Trusteeship hearing within thirty (30) days of imposition of the emergency trusteeship in violation of LMRDA Title III, § 302, 29 U.S.C. § 462, 464)**

118. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

119. That pursuant to Article VIII, Section 7(f) of the SEIU Constitution, the President was required to appoint a hearing officer to conduct an emergency trusteeship hearing within thirty (30) days after the imposition of an emergency trusteeship. *See* **Ex. 9,** at 21.

120. That the Trusteeship Order stated that "[c]onsistent with the requirements of Article VIII, Section 7(f) of the SEIU Constitution, I will request that the International Executive Board appoint a hearing officer and that a notice of hearing be issued in the near future. Pursuant to that provision of the SEIU Constitution, a hearing regarding the SEIU's imposition of an emergency trusteeship over Local 1107 shall be held within thirty (30) days from the imposition of this trusteeship." *See* **Ex. 8,** at 3.

121. That on May 28, 2017, the SEIU President breached the SEIU Constitution by failing to follow the procedures in the SEIU Constitution and the Trusteeship Order that required the President to hold an emergency trusteeship hearing within thirty days of the imposition of the emergency trusteeship. *Id.*

122. That Defendants also failed to issue timely notice of the trusteeship hearing, and failed to establish good cause for postponing the hearing in accordance with the SEIU Constitution Article VIII, Section 7(f).

123. That Defendants' failure to establish and administer the trusteeship over Local 1107 in accordance with the SEIU Constitution and Bylaws is a violation of the LMRDA, 29 U.S.C. § 462, and 464.

124. That because Defendants have failed to administer and maintain the trusteeship in accordance with the procedures in the SEIU Constitution, Defendants are not entitled to the presumption of validity of the trusteeship. 29 U.S.C. § 464.

125. Due to the Defendants' failure to comply with the procedures outlined in the SEIU Constitution for the imposition of an emergency trusteeship in violation of 29 U.S.C. § 462 and 464, and the clear and convincing evidence that the trusteeship was administered and maintained in bad faith, Plaintiffs are entitled to injunctive relief ending the trusteeship, and the costs and expenses of this action, including Plaintiffs' reasonable attorney's fees.

**SEVENTH CAUSE OF ACTION**
**(Breach of the SEIU Constitution – Failure to Issue a Decision Regarding the Emergency Trusteeship within Sixty Days)**

126. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

127. That pursuant to the SEIU Constitution Article VIII, Section 7(f) the SEIU Executive Board was required to render a decision regarding the merits of the emergency trusteeship within sixty (60) days after the appointment of the Trustee. *See* **Ex. "9,"** at 21.

128. That on June 27, 2017, the SEIU President breached the SEIU Constitution by failing to follow the procedures in the SEIU Constitution that require the SEIU Executive Board to issue a decision on the merits of the emergency trusteeship within sixty days of the appointment of the Trustee on April 28, 2017. *Id.*

129. That on July 3, 2017, the day before a holiday weekend and sixty six (66) days after imposition of the trusteeship, Defendants issued an untimely Notice of Trusteeship Hearing. *See*

**Ex. 13,** at 1. The Notice of Trusteeship hearing retroactively asserted that the International President had found good cause to postpone the hearing two weeks before the hearing before Judge Gordon who apprised defense counsel of the fact that the thirty (30) day window had passed:

> On May 25, 2017, under her express authority under Article VIII, Section 7(f) of the SEIU Constitution, the International President determined that good cause existed to hold the Local 1107 trusteeship hearing more than 30 days after the imposition of the trusteeship- in light of Local 1107's pending commitments and the schedules of the individuals whose attendance at the hearing was necessary. The International President also determined that good cause existed for the International Executive Board's decision on the trusteeship to be made more than 60 days after the trusteeship was imposed. *Id.* at 2.

130. However, the excuse that "Local 1107's pending commitments and schedules of the individuals whose attendance at the hearing was necessary," while deficient to establish good cause to postpone the trusteeship hearing, does nothing to justify the SEIU Executive Board's failure to issue a decision on the trusteeship within sixty days of appointment of the trustee. *Id.* at 2.

131. That Defendants' failure to establish and administer the trusteeship over Local 1107 in accordance with the SEIU Constitution and Bylaws is a violation of the LMRDA, 29 U.S.C. § 462, which provides that "Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462.

132. That because Defendants have failed to administer and maintain the trusteeship in accordance with the procedures in the SEIU Constitution, Defendants are not entitled to the presumption of validity of the trusteeship. 29 U.S.C. § 464.

133. Due to the Defendants' failure to comply with the procedures outlined in the SEIU Constitution for the imposition of an emergency trusteeship, and the clear and convincing evidence that the trusteeship was administered and maintained in bad faith, Plaintiffs are entitled to injunctive relief ending the trusteeship, and the costs and expenses of this action, including Plaintiffs' reasonable attorneys' fees.

**EIGHTH CAUSE OF ACTION**
**(Breach of the SEIU Constitution Article VIII, Section 7(f) – Untimely and Improper Notice to Local 1107 of the trusteeship hearing in violation of LMRDA Title III, § 302, 29 U.S.C. § 462, 464)**

134. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

135. That on April 28, 2017, the SEIU President appointed Trustee, Luisa Blue, to take over governance of Local 1107.

136. That Luisa Blue immediately disbanded the Local 1107 Executive Board after being appointed as trustee.

137. That pursuant to the SEIU Constitution, the President was required to issue timely notice of the emergency trusteeship hearing to the membership of Local 1107 within thirty (30) days of appointment of the trustee. *See* **Ex. 9,** at 21.

138. That the Trusteeship Order stated that the trusteeship hearing would be "held within thirty (30) days from the imposition of this trusteeship," and that notice of the date of the hearing would "be issued in the near future." *See* **Ex. 8,** at 3.

139. That no notice was sent to Local 1107 and no trusteeship hearing was held within thirty (30) days of imposition of the trusteeship.

140. That on July 3, 2017, at 4:20 p.m., seventy-six (66) days after the appointment of the Trustee and disestablishment of the Local 1107 Executive Board as the governing body of

Local 1107, the SEIU President and the Trustee breached the SEIU Constitution by failing to properly notice the entire Local 1107 membership of the trusteeship hearing.

141. That instead of sending out the Notice of Trusteeship Hearing to the membership of Local 1107, Defendants sent the untimely Notice of Trusteeship Hearing only to the former members of the Local 1107 Executive Board they had disbanded over two (2) months earlier, and the day before a holiday weekend when many people were scheduled to be out of town. *See* Notice of Trusteeship Hearing Email, 7/3/17, attached as **Exhibit "16,"** at 1.

142. That the notice of the hearing was provided only nine (9) days prior to the date of the hearing, one day less than the lowest minimum time period of ten (10) days for notice found in the SEIU Constitution.

143. That Defendants failed to notice all the former Local 1107 Executive Board members who were suing to invalidate the trusteeship that the trusteeship hearing was going to be held on July 13, 2017.

144. That Defendants further required the disbanded executive board send the Trusteeship Hearing Notice to the membership, and to secure a majority vote in less than (10) days, and over a holiday weekend, for them to be represented by a spokesperson at the trusteeship hearing who could present evidence and call and cross-examine witnesses. *See* **Ex. 13,** at 2-3.

145. That Defendants' untimely, insufficient notice to the Local 1107 membership regarding the trusteeship hearing denied the Local 1107 members opportunity to attend the hearing.

146. That Defendants' unreasonable requirement that the Local 1107 Executive Board secure a majority vote after it was disbanded in order to be represented at the trusteeship hearing

denied Local 1107 the opportunity to present evidence, witnesses and to cross-examine witnesses denying Plaintiffs a full and fair hearing constituting a denial of due process.

147. That Defendants' failure to follow the procedures outlined in the SEIU Constitution to provide timely and proper notice the Local 1107 membership regarding the trusteeship hearing denied the majority of the Local 1107 membership the opportunity to attend the hearing, thus denying Local 1107 a fair hearing on the merits of the emergency trusteeship constituting a denial of due process.

148. That Defendants' have failed to establish and administer the trusteeship over Local 1107 in accordance with the SEIU Constitution and Bylaws is a violation of the LMRDA, 29 U.S.C. § 462.

149. That because Defendants have failed to administer and maintain the trusteeship in accordance with the procedures in the SEIU Constitution, Defendants are not entitled to the presumption of validity of the trusteeship in 29 U.S.C. § 464.

150. Due to the Defendants' failure to comply with the procedures outlined in the SEIU Constitution for the imposition of an emergency trusteeship, and the clear and convincing evidence that the trusteeship was administered and maintained in bad faith, Plaintiffs are entitled to injunctive relief ending the trusteeship and the costs and expenses of this action including Plaintiffs' reasonable attorneys' fees.

**NINTH CAUSE OF ACTION**
**(Breach of the SEIU Constitution Article VIII, Section 7(f) – Failure to Hold a Fair Hearing on the Merits and Necessity of the Trusteeship)**

151. Plaintiffs restate all the preceding and subsequent allegations as though fully set forth herein.

152. That pursuant to the SEIU Constitution Article VIII, Section 7(f) "In order to ensure that no trusteeship is imposed without an adequate right to be heard or without other appropriate safeguards," a fair hearing to determine whether the trusteeship was reqired. *See* **Ex. 9,** at 21.

153. That on July 3, 2017, sixty-six (66) days after the appointment of the Trustee and disbanding of the Local 1107 Executive Board as the governing body of Local 1107, the SEIU President noticed some of the former members of the Local 1107 Executive Board regarding the July 13, 2017 trusteeship hearing, but expressly excluded noticing members they knew were against the trusteeship, to wit: the Plaintiff members who sued to invalidate the trusteeship in the Nevada 8th Judicial District Court. *See* **Ex. 13,** at 2-3.

154. That the notice, which did not go out to the Local 1107 membership, nor go out to all the disbanded Executive Board members, placed unreasonable and unfair limitations on the Local 1107's ability to designate a spokesperson to represent it at the hearing by requiring the disbanded Executive Board to secure a majority vote to designate a spokesperson over a holiday weekend and less than ten (10) days before the hearing was to be held.

155. That because of the improper, untimely and unreasonably restricted notice a spokesperson was not designated to represent the membership at the trusteeship hearing.

156. That because there was no spokesperson, the SEIU President was the "only official party in the proceeding." *Id.* at 2.

157. That because there was no spokesperson for Local 1107, only the Board Members who received notice and attended were permitted to comment on behalf of the membership.

158. That Local 1107 was denied the opportunity to present evidence in opposition to the trusteeship, denying Local 1107 their right to a full and fair hearing under the SEIU Constitution and 29 U.S.C. § 464 and constituting a denial of due process.

159. That Local 1107 was denied the opportunity to present witnesses in opposition to the trusteeship, and was denied the opportunity to cross-examine the SEIU President's witnesses in opposition to the trusteeship, denying Local 1107 their right to a full and fair hearing under the SEIU Constitution and 29 U.S.C. § 464 constituting a denial of due process.

160. That at the July 13, 2017, hearing, Defendants did not address the emergency situation that warranted the need for immediate imposition of the trusteeship without first holding a trusteeship hearing.

161. That the July 13, 2017 hearing did not address the good cause for not adhering to the reasonable time period requirements for holding the trusteeship hearing pursuant to the SEIU Constitution.

162. That the July 13, 2017 hearing did not address the necessity for the trusteeship, nor the need to continue it, and instead was a second prosecution of the Local 1107 Executive Board officers removed by the SEIU President.

163. That SEIU President Henry appointed a former SEIU Executive Board member, April Verrett, as hearing officer who was not a neutral party and was biased in favor of the trusteeship, denying Local 1107 a full and fair ratification hearing in violation of 29 U.S.C. § 464 constituting a denial of due process.

164. That because Defendants have failed to administer and maintain the trusteeship in accordance with the procedures in the SEIU Constitution, Defendants are not entitled to the presumption of validity of the trusteeship in 29 U.S.C. § 464.

165. That Defendants failure to hold a full and fair ratification hearing on the merits and necessity of the trusteeship was a violation of 29 U.S.C. § 464 warranting injunctive relief ending

the trusteeship, and the award of costs and expenses of this action, including Plaintiff's reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, request the following relief:

1. That this Court grant a permanent injunction ordering SEIU to immediately relinquish all property, rights, powers and control of Local 1107 to the Local 1107 Executive Board.

2. For an Order mandating Cherie Mancini's reinstatement of her membership with SEIU and her position as President of Local 1107.

3. For attorney fees and costs relating to this action for injunctive relief; and

4. Any such other and further relief as may be necessary to do justice.

Dated this 8th day of August, 2017.

/s/ Michael J. Mcavoyamaya
______________________________
MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*