MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**
* * * *

| | |
|---|---|
| CHERIE MANCINI, individually; and FREDERICK GUSTAFSON as a member, and on behalf of CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION; CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka Local 1107, a non-profit cooperative corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as trustee; MARY K. HENRY, in her official capacity as Union President; DOES; and ROE CORPORATIONS 1-20, inclusive,<br><br>Defendants. | CASE NO.: 2:17-cv-02137<br><br>**PLAINTIFF MANCINI'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING AND PRELIMINARY AND PERMENANT INJUNCTION ON AN ORDER SHORTENING TIME**<br><br>**(With Notice)** |

COMES NOW, Plaintiff, CHERIE MANCINI, by and through her attorney of record, MICHAEL MCAVOYAMAYA, ESQ., and hereby moves this Court for a Temporary Restraining Order and Preliminary and Permanent Injunction on Order Shortening Time, pursuant to FRCP 65, granting the following relief against Defendants SERVICE EMPLOYEES INTERNATIONAL UNION, CTW, CLC, LUISA BLUE, and MARY K. HENRY, as well as their officers, agents, servants and employees, and all persons in active concert or participation with them:

- Enjoining and restraining Defendants from further denying Mancini her rights protected under the LMRDA by immediately reinstating her membership with SEIU and position as Local 1107 President.

This motion is made and based upon the complaint on file herein, the memorandum of points and authorities submitted herewith, and the affidavits and exhibits attached hereto.

Dated this 10th day of August, 2017.

/s/ Michael J. Mcavaoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiff*

**ORDER SHORTENING TIME**

Based on the above Declaration of Counsel, and finding that good cause exists to shorten the time of the hearing of the above Motion,

IT IS HEREBY ORDERED, that the hearing on *Plaintiffs' Application for Temporary Restraining Order and Motion for Preliminary and Permanent Injunction* be shortened and scheduled for hearing before the above-entitled Court on the ___ day of August 2017, at the hour of ___ a.m. of said day, or as soon thereafter as counsel may be heard.

DATED this ___, day of August, 2017.

______________________________
DISTRICT COURT JUDGE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## STATEMENT OF FACTS

On September 9, 2016, Local 1107 Executive Vice President Sharon Kisling and Local 1107 Trustee Clara Thomas filed internal charges with SEIU against Local 1107 President Mancini alleging numerous violations of the SEIU Constitution, which was sent to SEIU President Henry. *See* Assumption of Original Jurisdiction and Notice of Consolidated Hearing, attached as **Exhibit "1,"** at 1; *see also* Kisling v. Mancini (the "Kisling Charges"), 9/9/16, attached as **Exhibit "2,"** at 1. The Kisling Charges alleged that President Mancini violated Article XVII, Section 1(1) – (6) of the SEIU Constitution, and the following provisions of the Local 1107 Constitution: Article 7, Sections 6 and 10A, Article 14, Section 1, and Article 15, Sections 1A(1), (3)-(12) and (16).

On September 13, 2016, Local 1107 Vice President Brenda Marzan filed internal charges with SEIU against President Mancini alleging numerous violations of the Local 1107 Constitution, also circumventing the procedures established in the Local 1107 Constitution. *Id.*; *see also* Marzan v. Mancini (the "Marzan Charges"), 9/13/16, attached as **Exhibit "3,"** at 1. The Marzan Charges alleged that President Mancini violated the following provisions of the Local 1107 Constitution: Article 7, Sections 6A and 6B5, Article 8, Sections 2B and 2C, Article 11, Section 11C, Article 15, Sections 1(1), 1(3), 1(6) and 2(A), and Article 16, Sections 4, 6, and 10. *Id.*

On October 17, 2016, SEIU President Henry assumed jurisdiction over the internal charges lodged against President Mancini, as well as numerous other members of the Local 1107 Executive Board. *See* **Ex. 1,** at 1. The Internal Charges Notice contained no mention that the hearing would be consolidated with a hearing on the internal needs of the local pursuant to Article VIII, Section 7(g) of the SEIU Constitution. *Id.*

The Internal Charges Notice also did not include any of the specific factual allegations against Mancini that SEIU found were credible and related to specific enumerated sections of the

SEIU and Local 1107 Constitutions. *Id.* Rather, the Notice included the informal charging documents sent to SEIU President Henry by the charging parties. The majority of the factual allegations contained in the informal charging documents were found irrelevant, and were dismissed by Hearing Officer Nieters. *See* ICRR, attached as **Exhibit "4,"** at 25. Only the allegations on the first page of the Marzan Charges were used to sustain charges against Mancini under Article 7, Section 6(B)(5), and Article 16, Sections 4 and 6 of the Local Constitution, and Article 21, Section 3(3) of the Local 1107 Constitution to remove her from office and suspend her membership. *See* **Ex. 3,** at 1; *see also* **Ex. 4,** at 16.

Six months after the Internal Charges Hearing, on April 26, 2017, Hearing Officer Nieters issued two Reports and Recommendations relating to the Internal Charges Hearing that was held the year prior. *See* **Ex. 4,** at 1; *see also* Internal Needs Report and Recommendation, attached as **Exhibit "5,"** at 1. In Hearing Officer Nieters' Internal Charges Report and Recommendation ("ICRR"), she recommended that Mancini and Kisling be removed from their respective board positions as President and Executive Vice President of Local 1107. **Ex. 4,** at 26-27. In the ICRR, Nieters states she focused the report on the allegations that arose to "serious breaches of duty, and I do not discuss separately each and every conclusory statement or minor allegation":

> I do not separately address charges which, even assuming them to be true, reflect poor administrative practices, mere differences in opinion, or possibly a culture of disrespectful treatment. ***These may represent less than best practices, but I do not find that they rise to the level of "gross inefficiency" or "failure to perform duties" within the meaning of the SEIU or Local 1107 Constitutions and Bylaws, nor do they constitute cognizable charges thereunder***.

*Id.* at 6-7.

Hearing Officer Nieters sustained only two of the alleged charges against President Mancini: (1) disregard of Board's authority regarding staff and contracts under Article 8, Section 2(C) of the Local 1107 Constitution; and (2) derogation of duty to officers and bargaining committee members under Article 7, Section 6(B)(5), and Article 16, Sections 4 and 6 of the Local 1107 Constitution, and Article XVII, Section 1(3) of the SEIU Constitution relating to Mancini's temporary postponement of a ratification vote for a recently negotiated collective bargaining

agreement ("CBA") for the employee members of the University Medical Center ("UMC"). *Id.* at 26.

The first charge sustained by Hearing Officer Nieters was found to be minor, warranting only a leadership development training course. *Id.* Further, Nieters found that the seemingly conflicting provisions of the Local 1107 Constitution could have led Mancini to believe she was within her constitutional authority, and Ms. Mancini was not solely responsible for the "breakdown in governance." *Id.* at 10-11. The second charge sustained by Nieters against Mancini was found to be serious enough to remove her from her position as Local 1107 President, and to suspend her membership with SEIU for six (6) months. *Id.* Executive Vice President Kisling was also removed from office. *Id.*

On April 26, 2017, SEIU President Henry sent Local 1107 a letter notifying them that she was removing Mancini from her position as Local 1107 President, and Suspending her membership. *See* Henry Letter, attached as **Exhibit "6,"** at 1-2.

## II.

## LEGAL ARGUMENT

This Court should issue a Temporary Restraining Order and Permanent Injunction enjoining and restraining Defendants from further controlling Local 1107 because: (1) Plaintiff is likely to succeed on the merits of this action; (2) Plaintiff is currently and will continue to suffer irreparable harm if Defendants are not enjoined from further controlling and directing Local 1107; (3) the Plaintiff's interests outweigh the Defendants' interests, and injunctive relief is in the public's interest. Each will be discussed in detail below.

### A. Standard Of Review.

Plaintiff Mancini brings this Ex Parte Application for Temporary Restraining Order ("TRO") pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202. Fed. R. Civ. P. 65(b) specifically authorizes this Court to enter an ex parte temporary restraining order before the adverse party can be afforded the opportunity to be fully heard on the issues where the plaintiff will suffer immediate

and irreparable injury. *Cenergy Corp. v. Bryson Oil & Gas P.L.C.*, 657 F. Supp. 867 (D.Nev. 1987).

In considering a TRO or preliminary injunction, the Ninth Circuit utilizes the "sliding-scale" standard, which looks at the degree of irreparable harm and the degree of likely success on the merits. *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127 (9th Cir. 2011). The Supreme Court recently overruled the portion of the Ninth Circuit's sliding scale test that permitted "injunctive relief upon the *possibility*, as opposed to ***likelihood***, of irreparable injury to the plaintiff." *Winter v. NRDC, Inc.* 555 U.S. 7, 51, 129 S. Ct. 365, 392 (2008); *see also Klinke v. Bannister*, 2013 U.S. Dist. LEXIS 165156, *9 (D. Nev. Oct. 30, 2013). Thus, under *Winter*, Plaintiff must establish that there is a ***likely*** risk of irreparable harm, not just a possible risk, when seeking a preliminary injunction. *Winter*, 129 S. Ct. at 375-76.

In determining there is a likely risk of irreparable harm, the instant motion "requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *Id.*

> The Ninth Circuit has since found that post-Winter, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." Id.

*Klinke*, 2013 U.S. Dist. LEXIS 165156, *8.

**B. <u>Plaintiff Mancini Has A Reasonable Likelihood Of Success On The Merits.</u>**

Plaintiff Mancini has a high likelihood of success on the merits of this action for injunctive relief for three reasons: (1) Defendants failed to notice Plaintiff Mancini of the specific charges against her; (2) the conduct allegedly in violation of the local 1107 constitution was done in good faith, on behalf of members, and after the UMC negotiations concluded; and (3) Defendants removed Mancini from her position as President of Local 1107 and suspended her membership for engaging in protected speech. Each will be discussed in detail below.

//

***a. SEIU Failed To Notice Mancini Of The Specific Charges Against Her Denying Her A Full And Fair Hearing, Resulting In A Denial Of Due Process.***

LMRDA Title I, § 101, 29 U.S.C. § 411(5) provides that: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(5). "Any person whose rights secured by the provisions of this title [29 USCS §§ 411 et seq.] have been infringed by any violation of this title [29 USCS §§ 411 et seq.] may bring a civil action in a district court of the United States for such relief (**including injunctions**) as may be appropriate." 29 U.S.C. § 412 (emphasis added.)

The LMRDA does not provide a cause of action for removal of a union officer, unless the disciplinary action affects the officer's membership rights. *USW Local 12-369 v. USW Int'l*, 728 F.3d 1107, 1117 (9th Cir. 2013). "[U]nion officers, like union members are protected by the LMRDA against discipline that affects their rights as union members." *Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local No. 287*, 175 F.3d 680, 686 (9th Cir. 1999). "The Supreme Court has interpreted § 411(a)(5) to require that charges be 'specific enough to inform the accused member of the offense that he has allegedly committed.'" *Johnson v. National Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071, 1074 (9th Cir. 1999) *citing International Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 245, 28 L. Ed. 2d 10, 91 S. Ct. 609 (1971). Abstract, unspecific examples of alleged violations without specific dates on which the violations occurred do not satisfy the specificity requirement of 20 U.S.C. § 411(5). *Id*.

Here, SEIU President Henry removed Mancini from her position as Local 1107 President and suspended her membership. *See* **Ex. 6,** at 2. As such, Mancini can maintain an action relating to her removal and suspension because the discipline affected her membership rights with SEIU. Further, while the LMRDA does not require the charges to include specific provisions of the union constitution in the notice of charges, the SEIU Constitution does require such specificity.

Article XVII Section 2 of the SEIU Constitution states that:

> The charges ***must specify*** ***the events or acts which the charging party believes constitute a basis for charges and*** ***must state which subsection(s) of Section 1*** ***of***

> ***this Article the charging party believes has been violated***. If the charges are not specific, the trial body may dismiss the charges either before or at the hearing, but the charging party shall have the right to refile more detailed charges which comply with this Section. No charges may be filed more than six months after the charging party learned, or could have reasonably learned, of the act or acts which are the bases of the charges."

*See* SEIU Constitution, attached as **Exhibit "7,"** at 37 (emphasis added.)

*i. The Charges Against Mancini Were Abstract, Unspecific And Contradictory*

On October 17, 2016, SEIU President Henry disseminated a notice that she was asserting jurisdiction over the charges against the Local 1107 Board Members, including Plaintiff Mancini. *See* **Ex. 1,** at 1. The Notice did not include any of the specific factual allegations against Mancini that SEIU found were credible and related to the enumerated sections of the SEIU and Local 1107 Constitutions. *Id.* Rather, the Notice included the informal charging documents sent to SEIU President Henry by the charging parties. The majority of the factual allegations contained in the informal charging documents were irrelevant and dismissed by Nieters without being addressed in the ICRR.

Only three bullet points on the first page of the Marzan Charges contained factual allegations that were used to sustain charges against Mancini under Article 7, Section 6(B)(5), and Article 16, Sections 4 and 6 of the Local Constitution, and Article 21, Section 3(3) of the Local 1107 Constitution. *See* **Ex. 3,** at 1; *see also* **Ex. 4,** at 16. The charges alleged that Mancini violated the Local 1107 Constitution by not staying informed of the UMC collective bargaining negotiations, halted the UMC CBA ratification vote, and that Mancini "publicly attack[ed]" the UMC bargaining team. *See* **Ex. 3,** at 1. However, other than the public notice canceling the ratification vote and alleging that the UMC bargaining team was under investigation by the Board, the Marzan charges did not include any specific examples of Mancini's conduct during the UMC bargaining process that were supposed breaches of the Local 1107 Constitution. *Id.* Instead, the Marzan charges included general, contradictory allegations that were not actual violations of the SEIU or Local 1107 Constitutions. Further, the conduct allegedly in violation of the Local 1107 Constitution occurred after the UMC collective bargaining took place. Finally, the charges

sustained against Mancini related to provisions of the Local 1107 Constitution that were not alleged denying her due process by curtailing her ability to present a defense.

The Marzan Charges alleged that Mancini violated Article 7, Section 6(B)(5) and Article 16, Section 6 of the Local 1107 Constitution, which pertain to the exact same duty of the President to "[s]erve as an ex-officio member of all bargaining committees of the Local Union and it is the very important duty and responsibility of the President to actively take part in and stay informed of bargaining in all areas and to participate with the bargaining committees (see Article 16-Collective Bargaining, Section 6- Bargaining Committee)." *See* Local 1107 Constitution, attached as **Exhibit "8,"** at 13, 49. However, nothing in these two provisions requires the Local 1107 President to take part in the actual negotiations of every collective bargaining unit, which would be impractical considering negotiations of multiple CBAs often occur at the same time.

The charges themselves were also unspecific and contradictory, alleging that "President Mancini was unaware of the status of negotiations ***<u>even though the officers gave status updates during the executive board meetings</u> and that UMC employees/members received joint UMC management/SEIU bargaining team updates with contract language and photos of the mutually interest based bargaining boards put out through employer email after every bargaining session***." *See* **Ex. 3,** at 1. No specific examples of what Mancini was unaware of regarding the negotiations was included in the charges, instead asserting abstract, conclusory allegations without specific dates on which the alleged breaches occurred. *Id.* Further, considering status updates were being given at every board meeting, and Mancini was present at those meetings, it cannot be said that Mancini, as Local 1107 President, was not staying informed of the status of the UMC collective bargaining negotiations without some specificity on what she was not informed about.

This lack of specificity regarding the UMC CBA negotiations was transferred to Hearing Officer Nieters' ICRR. Nieters acknowledges in the ICRR that:

> **<u>The evidence was conflicting</u>** on whether and when Sister Mancini attempted to exercise her constitutionally mandated role on the bargaining committee. She may have made some early, if unavailing, efforts to participate, but the credible evidence suggests that she was ***<u>largely absent</u> <u>from the negotiations</u> that took place on a regular basis between March and July 2016.***"

*See* **Ex. 4,** at 13 (emphasis added.)

Again, nothing in the Local 1107 Constitution mandates that the President take part in every collective bargaining negotiation with employers, and permits the President to designate a spokesperson to attend the negotiations, which Mancini did. *See* **Ex. 8,** at 46-47. Nieters never specifically states what Mancini did not stay informed on, simply alleging that failing to attend the UMC negotiations was a breach of her duty to "'[s]erve as an ex-officio member of all bargaining committees." *Id.*; *see also* **Ex. 4,** at 13-14.

Nieters even acknowledges that the UMC Bargaining Unit, not President Mancini, were vested with the authority to negotiate the CBA stating that Mancini's "precipitous cancelation of the ratification vote directly through the employer, without even communicating with the bargaining committee, ***effectively circumvented the democratic process set in place by the Constitution, which vests the authority to negotiate in the bargaining committee***." *See* **Ex. 4,** at 15 (emphasis added.) In determining whether a union member was properly disciplined, ambiguities and uncertainties in union constitution and bylaws should be resolved against the union and in favor of member. *McCraw v. United Asso. of Journeymen & Apprentices, etc.*, 216 F. Supp. 655, 662 (E.D. Tenn. Feb. 11, 1963); *see also Solis v. Local 234, Transp. Workers Union*, 585 F.3d 172, 181 (3d Cir. 2009) ("[A]mbiguous constitutional provisions must be construed broadly in favor of complaining union members, whose interpretations need only be reasonable under the circumstances); *see also Boggs v. International Brotherhood of Electrical Workers*, 326 F. Supp. 1, 2 (D. Mont. May 9, 1971) ("A union should not discipline its members for the violation of a rule unless the rule establishes a clear line between what is permitted and not permitted").

In sum, Nieters sustained charges against Mancini for not participating in the actual negotiation of the UMC CBA, and also for supposedly intervening in the negotiating process. Indeed, the Marzan Charges alleged that "President Mancini's lack of participation in the UMC bargaining process" was a violation of Article 7 Section 6, and Article 16 Section 6. *See* **Ex. 3,** at 1. However, participating in the actual negotiations of every CBA with employers is not expressly required by the Local Constitution, which is ambiguous as to what the duty actually is, and Article 16, Section 6 provides that "[t]he Local President, **<u>or designee</u>**, shall be the chief spokesperson for this Local Union in all collective bargaining with any employer," indicating that the President is

not required to actually take part in the negotiations. *See* **Ex. 8,** at 47. Further, Nieters even acknowledges the fact that the Unit, not the President, was vested with the authority to negotiate the CBA, contradicting her supposed need to attend the negotiations themselves. *See* **Ex. 4,** at 13.

The factual allegations in the Marzan charges are abstract unspecific allegations that Mancini did not participate "in the UMC bargaining process," without including specific dates or facts surrounding the alleged breach, and were actually sustained because she did not participate in the negotiations, which is not required by the Local 1107 Constitution. *Id.* The complete lack of specific factual allegations regarding Mancini's supposed breaches of the Local 1107 Constitution is a violation of the LMRDA Title I, § 101, 29 U.S.C.§ 411(5)'s specificity requirement. Mancini was not given adequate notice of the specific dates and conduct that were supposedly violations of the Local 1107 Constitution prior to the Internal Charges Hearing. Further exacerbating this lack of specificity is the fact that the charges were contradictory, the provisions were ambiguous regarding whether an actual violation of the Local 1107 Constitution had occurred. This lack of specificity resulted in Mancini being unable to present a sufficient defense, constituting a denial of due process guaranteed by the LMRDA. 29 U.S.C. §411(5).

*ii. The Charges Sustained Against Mancini Related To Provisions Of The Local 1107 Constitution That Were Never Alleged By The Charging Parties*

Nieters also sustained charges that were never actually alleged by the charging parties or included in the Notice of Consolidated Hearing. Specifically, the Marzan Charges did not allege a breach of Article 16, Section 4 relating to the UMC collective bargaining agreement that was sustained by Hearing Officer Nieters. Rather, the Marzan Charges alleged that "President Mancini violated [Article 16, Section 4] of the Constitution and Bylaws by not informing or allowing the members of Clark County to participate in the Settlement Agreement signed by President Mancini on August 13, 2016," a charge which was subsequently dismissed by Nieters after the hearing. *See* **Ex. 3,** at 1; *see also* **Ex. 4,** at 26-27.

According to Nieters, the "most critical[]" issue that led to Mancini's removal from office occurred after the UMC negotiations had concluded. *See* **Ex. 4,** at 13. Specifically, Nieters states that she recommended removing Mancini from her position as President and suspend her membership for disloyalty and conduct unbecoming an officer in violation of Article 21, Section

3(3). *See* **Ex. 4,** at 16. Neither the Internal Charges Notice, nor the informal charging documents contain factual allegations or references to a violation of Article 21, Section 3 of the Local 1107 Constitution. *See* **Ex. 4,** at 13**;** *see also* **Ex. 2;** *see also* **Ex. 3.** Further, Article 21, Section 3(3) of the Local Constitution states "[g]ross disloyalty or conduct unbecoming a member." *See* **Ex. 8,** at 56. This provision does not permit a President to be charged with disloyalty to the members of a collective bargaining unit, especially when the actions taken were in good faith at the request of members of the union, and there is no charge for conduct unbecoming an officer. *Id.*

Without proper notice of what specific factual allegations would be heard as they related to what specific provisions of the Local 1107 Constitution, Mancini could not know what charges and alleged conduct to defend herself against at the hearing. Defendants' failure to properly notice Mancini of the specific factual allegations and specific charges against her denied Mancini her right to prepare a defense and receive a full and fair hearing under the LMRDA Title I, § 101, 20 U.S.C.§ 411(5) constituting a denial of due process. As a result of Defendants' denial of a full and fair hearing to Mancini regarding the charges against her, Defendants have improperly disciplined Mancini by removing her from office and suspending her membership for six (6) months. *Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local No. 287*, 175 F.3d 680, 686 (9th Cir. 1999) ("We note, however, that union officers, like union members are protected by the LMRDA against discipline that affects their rights as union members"). Because Defendants failed to meet the specificity requirements of 29 U.S.C. § 411(5), and Plaintiff Mancini's high likelihood of success on the merits, she is entitled to a TRO and permanent injunction ordering her immediate reinstatement with SEIU and her position as Local 1107 President.

***b. The Conduct Allegedly In Violation Of The Local 1107 Constitution Was Done In Good Faith, On Behalf Of Members, And After The UMC Negotiations Concluded***

The Marzan Charges and Nieters' ICRR allege that Mancini breached her duty to take part and stay informed on collective bargaining with employers. *See* **Ex. 4,** at 13. However, Nieters never expressly states what Mancini did or failed to do prior to the close of the UMC negotiations that warranted sustaining the charges. Rather, Nieters states that Mancini "unilaterally reduced the proposed three-day voting period to a single day." *Id.* at 14. This allegation is troublesome for several of reasons.

First, the ratification vote is not part of collective bargaining negotiations with the employer, but rather, is required after the negotiation process has concluded: "**The results of any Collective bargaining sessions of a Bargaining Unit shall be subject to a ratification vote by the members** of that Bargaining Unit, with sufficient notice given to the membership and in accordance with other policies and procedures as determined by the Bargaining Committee, the Executive Board and the President of this Local Union." *See* **Ex. 8,** at 47 (emphasis added.) It is unclear how Mancini could be disciplined for a violation of a duty to participate in collective bargaining based on factual allegations that occurred after bargaining took place.

Second, the statement is misleading, as the ICRR and the Marzan Charges both reference a bulletin that was posted on the SEIU website stating that the post-negotiation ratification vote was cancelled because Local 1107 was "investigating allegations against members of the bargaining team," and that "[i]n the interest of transparency, accountability, to share the most recent information and gather member input, the Union will be holding meetings on Thursday, July 28 at 8 a.m. to 10 a.m., 4 p.m. to 6 p.m. and 7 p.m. to 9 p.m. at the Union Hall." *See* **Ex. 3,** at 5. The allegations referred to in the bulletin were not made by Mancini, but rather, were alleged by nursing staff members of UMC who were concerned about the lack of transparency of the UMC Collective Bargaining Unit, that the terms of the new CBA benefited the stewards of the Unit at the expense of the membership, and that the agreement included a term that reduced "the union's access to UMC workers." *See* **Ex. 4,** at 15; *see also* UMC Nurses Letter in Support of Mancini Appeal, attached as **Exhibit "9,"** at 1; *see also* Member Text Message to Mancini, 7/29/16, attached as **Exhibit "10,"** at 1.

Third, Nieters did not even find that Mancini's cancelation of the ratification vote was unwarranted:

> As a union leader, I am **enormously sympathetic to Sister Mancini's concern**. Access is a vital issue for unions. **I can appreciate her strong reaction to the reduction in access her bargaining committee members accepted**, even if they were well-intended and attempting to accommodate their members' professed preference.

*See* **Ex. 4,** at 15 (emphasis added.)

Rather, Nieters found that "her precipitous cancelation of the ratification vote directly through the employer, without even communicating with the bargaining committee, effectively circumvented the democratic process set in place by the Constitution, which vests the authority to negotiate in the bargaining committee." *Id.* Nothing in the Local 1107 Constitution bars the president from canceling a ratification vote and informing the employer, especially based on allegations of members of the Unit.[1] Regardless, Nieters found that even if Ms. Mancini:

> failed to perform her 'very important [constitutional] duty and responsibility' during the course of negotiations, ***her eleventh-hour intervention could be seen as a genuine, if misguided, effort to preserve the Local's access to the work site. Her conduct is mitigated by her motivation and may not warrant the serious discipline sought by the Charging Parties***.

*Id.* (emphasis added.)

What Nieters found warranted discipline was not failing to participate in negotiations, nor the cancelation of the ratification vote, but rather, it was that:

> Sister Mancini made a very public announcement – without any explanation or evident justification – that the bargaining committee had violated its fiduciary duty to the members. Her accusation impugned the integrity of the bargaining committee members and their loyalty to their members and put the Local and its entire membership in a terrible light with the employer and the community.

*Id.*

It was the "broadcast [of] unfounded, disloyal, and derogatory accusations against members of the committee **[on behalf of UMC members]**. . . demonstrating a derogation of the democratic process and a lack of presidential leadership and temperament," that supposedly warranted disciplinary measures. *Id.* at 16. Nieters concluded that "for her disloyal and conduct unbecoming an officer in violation of Article 21, Section 3[3], I recommend that Sister Mancini be removed from her position as president of Local 1107 effective immediately and barred from holding office in SEIU for a period of one (1) year. In addition, she should be suspended from membership in Local 1107 for a period of six (6) months." *Id.*

---

[1] It should also be noted that the UMC CBA was ratified on July 29, 2016, within the time period originally allotted for the vote.

Mancini's actions were done in good faith, were not actual violations of any specific provisions of the SEIU or Local 1107 Constitutions, the provisions were ambiguous at best, and the conduct allegedly warranting her removal occurred after the bargaining process had concluded. Nieters sustaining charges for not participating in the bargaining process based on conduct occurring after the bargaining process had concluded is contradictory, and failure to properly notice Mancini of the actual charges which were ultimately sustained against her demonstrates a denial of due process guaranteed by the LMRDA.

***c. Defendants Disciplined Plaintiff Mancini For Engaging In Protected Speech***

"The LMRDA 'was the product of congressional concern with widespread abuses of power by union leadership.'" *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 352 (U.S. 1989). LMRDA Title I, § 101, 29 U.S.C. § 411(2) guarantees union members the right to free speech and assembly, and bar unions from disciplining members for exercise of protected speech. From the "judicial evolution of the scope of the LMRDA free speech protection, a general rule is perceivable: a union member has the statutory right 'to express any views, arguments, or opinions' ***inside or outside of a union meeting***, subject to only three general limitations: (1) reasonable union rules relating to the conduct of union meetings; (2) reasonable rules relating to individual responsibility to the union as an institution; and (3) reasonable rules requiring members to refrain from conduct which would interfere with the union's performance of its legal or contractual obligations." *Fulton Lodge No. 2 of International Asso. of Machinists & Aerospace Workers v. Nix*, 415 F.2d 212, 218 (5th Cir. 1969). Criticism of union leadership and allegations of corruption by union officials is protected by the LMRDA, and "any provisions of the union constitution which make such criticism, whether libelous or not, subject to union discipline are unenforceable; and that the Act allows redress for such unlawful treatment." *International Brotherhood of Boilermakers, etc. v. Rafferty*, 348 F.2d 307, 312 (9th Cir. 1965) (citations omitted.) It is not necessary under 29 U.S.C. § 411(a)(2) that violation of union member's exercise of his free speech right be the primary cause of removal from office, discharge or discipline; it is illegal merely if violation of constitutional right was one cause of that discharge or discipline. *Bradford v. Textile Workers of America*, 563 F.2d 1138, 1143 (4th Cir. 1977).

Article 15, Section 1(A)(13) of the Local 1107 Constitution states that the President has a duty to "[p]ublish the Local Union newspaper and regular membership communications." *See* **Ex. 8,** at 44. Article 16, Section 6 of the Local 1107 Constitution states that "[t]he Local President, or designee, shall be the chief spokesperson for this Local Union in all collective bargaining with any employer." *Id.* at 47.

As demonstrated above, Nieters did not sustain charges against Mancini and recommend that she be removed from office and her membership suspended because she didn't take part in negotiations and postponed the ratification vote. Rather, Nieters found that it was that:

> Sister Mancini made a very public announcement – without any explanation or evident justification – that the bargaining committee had violated its fiduciary duty to the members. Her accusation impugned the integrity of the bargaining committee members and their loyalty to their members and put the Local and its entire membership in a terrible light with the employer and the community.

*See* **Ex. 4,** at 16.

It was the "broadcast [of] unfounded, disloyal, and derogatory accusations against members of the committee. . . demonstrating a derogation of the democratic process and a lack of presidential leadership and temperament," that supposedly warranted disciplinary measures. *Id.* Mancini wasn't the original party who alleged misconduct by the UMC bargaining unit. Rather, nursing members of the UMC Unit informed Mancini of possible misconduct by the bargaining committee, which led Mancini to the cancel of the ratification vote. *See* **Ex. 9; Ex. 10**. Criticism of union leadership is protected speech under the LMRDA, and permitting the discipline of Mancini for engaging in protected speech at the request of union members would have a chilling effect on members' exercise of their free speech rights. As such, Mancini has a high likelihood of success on the merits is entitled to injunctive relief.

**C. <u>Plaintiff Mancini Has Suffered And Will Continue To Suffer Irreparable Harm If Defendants Are Allowed To Continue To Exercise Control Over Local 1107.</u>**

The next element this Court must consider is irreparable harm. *Winter*, 129 S. Ct. at 375-76. 29 U.S.C. § 412 provides that:

> Any person whose rights secured by the provisions of this title [29 USCS §§ 411 et seq.] have been infringed by any violation of this title [29 USCS §§ 411 et seq.] may bring a civil action in a district court of the United States for such relief (***including injunctions***) as may be appropriate. Any such action against a labor

> organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

29 USCS § 412.

Removal of an officer from elected office and chilling of free speech rights guaranteed by the LMRDA are irreparable injuries for which money damages are not an adequate remedy. *Savage v. Tweedy*, 526 Fed. Appx. 765, 767 (9th Cir. 2013) *citing Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354-55 (1989) ("[T]he potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged. Not only is the fired official likely to be chilled in the exercise of his own free speech rights, but so are the members who voted for him.").

Here, Plaintiff Mancini's Complaint is for injunctive relief for the improper discipline of Local 1107 President Mancini. As such, evidence that an International Union has denied a member rights guaranteed under 29 U.S.C. § 411 is evidence of irreparable injury sufficient to justify granting injunctive relief in her favor. As illustrated above, Defendants denied Plaintiff Mancini of her right to a full and fair hearing, constituting a denial of due process by failing to provide her proper notice of the charges against her before removing her from her position a Local 1107 President and suspending her membership. Defendants also illegally disciplined Mancini for engaging in protected speech on behalf of Local 1107 members. Because Plaintiff Mancini was removed from office for engaging in protected speech at the request of Local 1107 members of the UMC unit, her removal has a chilling effect not only on Mancini's rights as a member, but also those who voted for her and requested that she intervene in the UMC CBA ratification vote due to lack of transparency and access to their union. Thus, Plaintiff Mancini has demonstrated irreparable injury sufficient to warrant enjoining Defendants from continuing to deny her membership with SEIU.

**D. <u>The Balance Of Equities And Public Interest Both Tip In Plaintiff's Favor.</u>**

The third factor when considering injunctive relief "requires the court 'to balance the interests of all parties and weigh the damage to each.'" *United Food & Commer. Workers Local 99 v. Brewer*, 817 F. Supp. 2d 1118, 1127 (D. Ariz. Sept. 23, 2011) *citing L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). "Union members' rights

under the LMRDA 'deserve[] vigorous protection.'" *Savage v. Tweedy*, 526 Fed. Appx. 765, 767 (9th Cir. 2013). While an individual member's rights "must be balanced against unions' interest in 'self-government,'" an international union's interest in self-government will be significantly undermined by their own failure to follow and enforce rules in their own constitution. *Id.*

Here, the balance of hardships tips strongly in Plaintiff Mancini's favor. Mancini is currently being denied membership with SEIU, has been denied due process, and has been disciplined for engaging in protected speech on behalf of members. Failing to reinstate Mancini's membership and her position as Local 1107 President will continue to deny her rights protected by the LMRDA, deny Local 1107's right to the official they elected to be President, and will have a chilling effect on Local 1107's members' exercise of their free speech rights because Mancini was discharged based on requests of UMC members to cancel the ratification vote. Money damages after the fact will not appropriately remedy the harm being done to Mancini and Local 1107. Like in *Savage*, the balance of equities tips in Plaintiff Mancini's favor warranting an order immediately reinstating her membership and position as Local 1107 President. As such, this Court should grant Plaintiffs' request for injunctive relief and order the immediate reinstatement of Mancini's membership and position as Local 1107 President.

**E. <u>Public Interest Tips In Favor Of Granting The Injunction.</u>**

Determining whether an injunction is in the public interest the Court must address the "impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). The public interest analysis for the issuance of injunctive relief "requires [the court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1107 (C.D. Cal. 2015). The public has a strong interest in preserving its freedom of association. *Sammartano*, 303 F.3d at 974.

> Union members' rights under the LMRDA 'deserve[] vigorous protection.' *Sadlowski*, 457 U.S. at 112. While these individual rights must be balanced against unions' interest in 'self-government,' *id.* at 117, the gravity of the UBC's interests is undermined by the fact that it did not enforce existing rules, but rather sought to impose ex post facto restrictions on Appellants' conduct. Under these circumstances, both the balance of the equities and the public interest favor injunctive relief.

*Savage*, 526 Fed. Appx. at 767.

Here, like in *Savage*, while the public interest could arguably tip in Defendants' favor because democratic self-governance is in the public's interest, Defendants' failure to follow and enforce rules in their own constitution significantly undermines this interest, tipping the public's interest in favor of Plaintiff Mancini. *Id.* As such, this Court should grant Plaintiff Mancini's request for TRO and permanent injunction ordering immediate reinstatement of her membership and position as Local 1107 President.

**III.**

**NO BOND OR ONLY A MINIMAL BOND SHOULD BE REQUIRED**

Defendants suffer no real harm from having to reinstate Mancini. Courts have repeatedly refused to require bonds when there is no realistic likelihood of harm:

> The Ninth Circuit has held that it [FRCP Rule 65] "invests the district court with discretion as to the amount of security required, if any." *Johnson v. Courturier*, 575 F.3d 1067, 1086 (9th Cir. 2009). A district court need not require a bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

*United Food & Commercial Workers v. Brewer*, USDC Ariz. Case No. No. CV-11-921-PHX-GMS (Sept. 23, 2011).

Moreover, even if somehow Defendants could show some risk of harm, the parties' continuing relationship provides Defendants with a ready means of recoupment, also warranting no bond here:

> As a result of the parties' ongoing financial relationships, the bond requirement is also properly waived since defendants are capable of recouping any costs or damages resulting from the wrongful issuance of the injunction. See e.g. *United States v. Bedford Assocs*., 618 F.2d 904, 916–17 (2nd Cir.1980) (holding that where the defendant is able to receive compensation for costs or damages, resulting from the wrongful issuance of the injunction, by virtue of amounts it owes the plaintiff through the parties' ongoing financial relationship, no security is required).

*California Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 2d 1129, 1160 (E. D. Cal. 2011).

Further, because money damages are not alleged, no bond should be required. Finally, a significant bond here would prevent the harm to Plaintiff and Local 1107 from being cured, as Plaintiff's association is a small one without significant assets, and this suit is currently being funded out of pocket by the members. See *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning*

*Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) ("The district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review").

## IV.

## CONCLUSION

Without granting this TRO, Defendants will continue to deny Plaintiff Mancini her rights guaranteed by the LMRDA, and curtail the rights of Local 1107's members to engage in free speech by expressing dissent. Therefore, based on the foregoing, Plaintiff respectfully requests this Court GRANT Plaintiff Mancini's Ex Parte Application for Temporary Restraining Order on Order Shortening Time. Specifically, Plaintiff respectfully requests the following order:

- Enjoining and restraining Defendants from further denying Mancini her rights protected under the LMRDA by immediately reinstating her membership with SEIU and position as Local 1107 President.

Dated this 10th day of August 2017

/s/ Michael J. Mcavoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 10th day of August, 2017, the undersigned served the foregoing **PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER ON ORDER SHORTENING TIME** on all counsel herein by causing a true copy thereof to be filed with the Clerk of Court using the CM/ECF system, which was served via electronic transmission by the Clerk of Court pursuant to local order.

CHRISTENSEN JAMES & MARTIN
EVAN L. JAMES, ESQ. (7760)
KEVIN B. ARCHIBALD, ESQ.
(13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
Email: elj@cjmlv.com,
kba@cjmlv.com
Attorneys for Defendant Service
Employees International Union

ROTHNER, SEGALL &
GREENSTONE
GLENN ROTHER (PRO HAC VICE)
JONATHAN COHEN (10551)
510 South Marengo Avenue
Pasadena, CA 91101-3115
Tel: (626) 796-7555
Facsimile: (626) 577-0214
Email: grothner@rsglabor.com,
jcohen@rsglabor.com
Attorneys for Defendant Service
Employees International Union

Dated this 10th day of August, 2017.
/s/ Michael J. Mcavoyamaya

________________________________

MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray,
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*