MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * * *

| | |
|---|---|
| CHERIE MANCINI, individually; and FREDERICK GUSTAFSON as a member, and on behalf of CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION; CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka Local 1107, a non-profit cooperative corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as trustee; MARY K. HENRY, in her official capacity as Union President; DOES; and ROE CORPORATIONS 1-20, inclusive,<br><br>Defendants. | CASE NO.: 2:17-cv-02137<br><br>**PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING AND PRELIMINARY AND PERMENANT INJUNCTION ON AN ORDER SHORTENING TIME**<br><br>**(With Notice)** |

COME NOW, Plaintiffs, CHERIE MANCINI and FREDERICK GUSTAFSON, by and through their attorney of record, MICHAEL MCAVOYAMAYA, ESQ., and hereby moves this Court for a Temporary Restraining Order and Preliminary and Permanent Injunction on Order Shortening Time, pursuant to FRCP 65, granting the following relief for Plaintiffs against Defendants SERVICE EMPLOYEES INTERNATIONAL UNION, CTW, CLC, LUISA BLUE, and MARY K. HENRY, as well as their officers, agents, servants and employees, and all persons in active concert or participation with them:

- Enjoining and restraining Defendants from further directing, managing, and controlling the affairs of Local 1107, or interfering with Local 1107's right of

self-governance, and for an order mandating that the trustee immediately restore all property, rights, powers and control of Local 1107 to the Board.

This motion is made and based upon the complaint on file herein, the memorandum of points and authorities submitted herewith, and the affidavits and exhibits attached hereto.

Dated this 10th day of August, 2017.

/s/ Michael J. Mcavaoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*

**ORDER SHORTENING TIME**

Based on the above Declaration of Counsel, and finding that good cause exists to shorten the time of the hearing of the above Motion,

IT IS HEREBY ORDERED, that the hearing on *Plaintiffs' Application for Temporary Restraining Order and Motion for Preliminary and Permanent Injunction* be shortened and scheduled for hearing before the above-entitled Court on the ___ day of August 2017, at the hour of ___ a.m. of said day, or as soon thereafter as counsel may be heard.

DATED this ___, day of August, 2017.

________________________________
DISTRICT COURT JUDGE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## STATEMENT OF FACTS

On September 9, 2016, Local 1107 Executive Vice President Sharon Kisling and Local 1107 Trustee Clara Thomas filed internal charges with SEIU against Local 1107 President Mancini alleging numerous violations of the SEIU Constitution, which was sent to SEIU President Henry. *See* Assumption of Original Jurisdiction and Notice of Consolidated Hearing, attached as **Exhibit "1,"** at 1; *see also* Kisling v. Mancini (the "Kisling Charges"), 9/9/16, attached as **Exhibit "2,"** at 1. The Kisling Charges alleged that President Mancini violated Article XVII, Section 1(1) – (6) of the SEIU Constitution, and the following provisions of the Local 1107 Constitution: Article 7, Sections 6 and 10A, Article 14, Section 1, and Article 15, Sections 1A(1), (3)-(12) and (16).

On September 13, 2016, Local 1107 Vice President Brenda Marzan filed internal charges with SEIU against President Mancini alleging numerous violations of the Local 1107 Constitution, also circumventing the procedures established in the Local 1107 Constitution. *Id.*; *see also* Marzan v. Mancini (the "Marzan Charges"), 9/13/16, attached as **Exhibit "3,"** at 1. The Marzan Charges alleged that President Mancini violated the following provisions of the Local 1107 Constitution: Article 7, Sections 6A and 6B5, Article 8, Sections 2B and 2C, Article 11, Section 11C, Article 15, Sections 1(1), 1(3), 1(6) and 2(A), and Article 16, Sections 4, 6, and 10. *Id.*

On October 17, 2016, SEIU President Henry assumed jurisdiction over the internal charges lodged against President Mancini, as well as numerous other members of the Local 1107 Executive Board. *See* **Ex. 1,** at 1. The Internal Charges Notice contained no mention that the hearing would be consolidated with a hearing on the internal needs of the local pursuant to Article VIII, Section 7(g) of the SEIU Constitution. *Id.*

The Internal Charges Notice also did not include any of the specific factual allegations against Mancini that SEIU found were credible and related to specific enumerated sections of the

SEIU and Local 1107 Constitutions. *Id.* Rather, the Notice included the informal charging documents sent to SEIU President Henry by the charging parties. The majority of the factual allegations contained in the informal charging documents were found irrelevant, and were dismissed by Hearing Officer Nieters. *See* ICRR, attached as **Exhibit "4,"** at 25. Only the allegations on the first page of the Marzan Charges were used to sustain charges against Mancini under Article 7, Section 6(B)(5), and Article 16, Sections 4 and 6 of the Local Constitution, and Article 21, Section 3(3) of the Local 1107 Constitution to remove her from office and suspend her membership. *See* **Ex. 3,** at 1; *see also* **Ex. 4,** at 16.

Six months after the Internal Charges Hearing, on April 26, 2017, Hearing Officer Nieters issued two Reports and Recommendations relating to the Internal Charges Hearing that was held the year prior. *See* **Ex. 4,** at 1; *see also* Internal Needs Report and Recommendation, attached as **Exhibit "5,"** at 1.

**A. <u>Nieters' Internal Charges Report and Recommendation.</u>**

Hearing Officer Nieters issued an Internal Charges Report and Recommendation ("ICRR"), which sustained several charges against President Mancini and the other charged board members. *Id.* Nieters' ICRR recommended that Mancini and Kisling be removed from their respective board positions as President and Executive Vice President of Local 1107. **Ex. 4,** at 26-27. In the ICRR, Nieters states she focused the report on the allegations that arose to "serious breaches of duty, and I do not discuss separately each and every conclusory statement or minor allegation":

> I do not separately address charges which, even assuming them to be true, reflect poor administrative practices, mere differences in opinion, or possibly a culture of disrespectful treatment. ***These may represent less than best practices, but I do not find that they rise to the level of "gross inefficiency" or "failure to perform duties" within the meaning of the SEIU or Local 1107 Constitutions and Bylaws, nor do they constitute cognizable charges thereunder***.

*Id.* at 6-7.

Hearing Officer Nieters sustained only two of the alleged charges against President Mancini: (1) disregard of Board's authority regarding staff and contracts under Article 8, Section

2(C) of the Local 1107 Constitution; and (2) derogation of duty to officers and bargaining committee members under Article 7, Section 6(B)(5), and Article 16, Sections 4 and 6 of the Local 1107 Constitution, and Article XVII, Section 1(3) of the SEIU Constitution relating to Mancini's temporary postponement of a ratification vote for a recently negotiated collective bargaining agreement ("CBA") for the employee members of the University Medical Center ("UMC"). *Id.* at 26.

The first charge sustained by Hearing Officer Nieters was found to be minor, warranting only a leadership development training course. *Id.* Further, Nieters found that the seemingly conflicting provisions of the Local 1107 Constitution could have led Mancini to believe she was within her constitutional authority, and Ms. Mancini was not solely responsible for the "breakdown in governance." *Id.* at 10-11. The second charge sustained by Nieters against Mancini was found to be serious enough to remove her from her position as Local 1107 President, and to suspend her membership with SEIU for six (6) months. *Id.* Executive Vice President Kisling was also removed from office. *Id.*

**B. <u>Nieters' Internal Needs Report and Recommendation.</u>**

Hearing Officer Neiters issued a second Report and Recommendation relating to the Internal Charges Hearing held on October 29-30, 2016, which she styled as a report on "The Internal Needs of SEIU Local 1107" ("INRR"). *See* **Ex. 5,** at 1. The INRR states that "[i]n formulating the recommendations contained in this report, I also considered relevant evidence that I received in connection with the hearing that I conducted on the internal charges filed against several Local 1107 members on October 29-30, 2016, as requested by President Henry pursuant to her authority under Article XVII, Section 2(f) of the SEIU Constitution." *Id.* No reference to this section is found in the Internal Charges Notice. *See* **Ex. 4,** at 1. Nieters recommended that, based on the evidence presented at the hearing six months prior, "immediate intervention in the Local – ideally in the form of an International Union trusteeship – is necessary to assure the performance of Local Union collective bargaining duties and functions, restore effective

democratic procedures in the Local, protect the interests of the Local and the membership, and otherwise carry out the legitimate objects of the International Union." *See* **Ex. 5,** at 13.

Despite failing to properly notice Local 1107 that the imposition of an emergency trusteeship would be considered at the internal charges hearing, six months after the hearing was held, Nieters issued a separate INRR recommending that "[b]ecause the circumstances as they were presented to me at the hearing ***fully justify the imposition of an emergency trusteeship***, I recommend that President Henry consult with counsel and consider that course of action." *Id.* at 2. Ms. Nieters never met with the officials of Local 1107, never attended meetings, and no notice of the internal needs hearing was ever sent to Local 1107.

**C. Imposition Of Emergency Trusteeship**

On April 26, 2017, the same day Nieters issued the reports, SEIU President Henry sent a letter to Local 1107's Executive Board informing them that she was invoking her power as the International Union's President to remove Mancini and Kisling from their positions as President and Executive Vice President of Local 1107 pursuant to the International Union Constitution Article XVII, Section 2(f). Henry further informed Local 1107 that she was sending "International Executive Vice President Neal Bisno and Deputy Chief of Staff Deedee Fitzpatrick to attend Local 1107's Executive Board meeting" scheduled that evening, April 26, 2017. *See* Henry Letter, attached as **Exhibit "6,"** at 2. No mention of the imposition of an emergency trusteeship was included in the letter. *Id.*

On April 28, 2017, Ms. Henry entered and disseminated an "Order of Emergency Trusteeship" to Local 1107 "[p]ursuant to [her] authority under Article VIII, Sections 7(a) and 7(f), of the SEIU Constitution and Bylaws." *See* Trusteeship Order, attached as **Exhibit "7,"** at 1. Henry also removed "all Local 1107 officers, Executive Board Members, trustees and representatives from their positions." *Id.* at 3. The Trusteeship Order also stated that "[c]onsistent with the requirements of Article VIII, Section 7(f) of the SEIU Constitution, I will request that the International Executive Board appoint a hearing officer and that a notice of hearing be issued in the near future. Pursuant to that provision of the SEIU Constitution, a hearing regarding the

SEIU's imposition of an emergency trusteeship over Local 1107 shall be held within thirty (30) days from the imposition of this trusteeship." *Id.* at 3.

**II.**

**LEGAL ARGUMENT**

This Court should issue a Temporary Restraining Order and Permanent Injunction enjoining and restraining Defendants from further controlling Local 1107 because: (1) Plaintiffs are likely to succeed on the merits of this action; (2) Plaintiffs currently and will continue to suffer irreparable harm if Defendants are not enjoined from further controlling and directing Local 1107; (3) the Plaintiffs' interests outweigh the Defendants' interests, and injunctive relief is in the public's interest. Each will be discussed in detail below.

**A. Standard Of Review.**

Plaintiffs bring this Ex Parte Application for Temporary Restraining Order ("TRO") pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202. Fed. R. Civ. P. 65(b) specifically authorizes this Court to enter an ex parte temporary restraining order before the adverse party can be afforded the opportunity to be fully heard on the issues where the plaintiff will suffer immediate and irreparable injury. *Cenergy Corp. v. Bryson Oil & Gas P.L.C.*, 657 F. Supp. 867 (D.Nev. 1987).

In considering a TRO or preliminary injunction, the Ninth Circuit utilizes the "sliding-scale" standard, which looks at the degree of irreparable harm and the degree of likely success on the merits. *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127 (9th Cir. 2011). The Supreme Court recently overruled the portion of the Ninth Circuit's sliding scale test that permitted "injunctive relief upon the *possibility*, as opposed to *likelihood*, of irreparable injury to the plaintiff." *Winter v. NRDC, Inc.* 555 U.S. 7, 51, 129 S. Ct. 365, 392 (2008); *see also Klinke v. Bannister*, 2013 U.S. Dist. LEXIS 165156, *9 (D. Nev. Oct. 30, 2013). Thus, under *Winter*, Plaintiff must establish that there is a *likely* risk of irreparable harm, not just a possible risk, when seeking a preliminary injunction. *Winter*, 129 S. Ct. at 375-76.

In determining there is a likely risk of irreparable harm, the instant motion "requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on

the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest." *Id.*

> The Ninth Circuit has since found that post-Winter, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." Id.

*Klinke*, 2013 U.S. Dist. LEXIS 165156, *8.

**B. <u>Plaintiffs Have A Reasonable Likelihood Of Success On The Merits.</u>**

Imposing a trusteeship is "an extraordinary intrusion into the affairs of a local union." *Retail Clerks Union v. Retail Clerks International Asso.*, 479 F.2d 54, 55 (9th Cir. 1973). As such, "[c]ongress limited in various ways the purposes for which and the procedures by which a trusteeship may be imposed upon a local union." *Id.* Trusteeships must be "established and administered by a labor organization over a subordinate body **<u>only</u>** in accordance with the constitution and bylaws of the organization which has assumed trusteeship," and only for the "purpose of [1] correcting corruption or financial malpractice, [2] assuring the performance of collective bargaining agreements or other duties of a bargaining representative, [3] restoring democratic procedures, or [4] otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462. There is a presumption of validity of a trusteeship so long as the trusteeship is administered in accordance with the international constitution and "***authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws***." 29 U.S.C. 464(c). Trusteeships that qualify for the presumption are valid for eighteen (18) months and "shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302 [29 USCS § 462]." *Id.*

While a hearing is required to maintain a trusteeship, it is not required before a trusteeship is imposed. *Hotel & Restaurant Employees & Bartenders International Union v. Rollison*, 615 F.2d 788, 792 (9th Cir. 1980). However, to impose a trusteeship without first holding a hearing,

there must be a good faith emergency situation justifying the imposition of a trusteeship before the hearing is held. *Id.* District courts have the discretion to determine if a good faith emergency situation existed prior to imposition of the trusteeship. *Id.* Imposition of emergency trusteeship "should not be taken without a prior hearing, absent some necessity for immediate action." *Id. see also Retail Clerks*, 479 F.2d at 55.

Plaintiffs have a high likelihood of success on the merits of this action supporting injunctive relief for two reasons: (1) SEIU failed to impose, administer, and maintain the emergency trusteeship in accordance with the SEIU Constitution; (2) the emergency trusteeship was imposed in bad faith for an improper purpose.

***a. Defendants Failed To Impose, Administer, And Maintain The Emergency Trusteeship In Accordance With The SEIU Constitution***

Defendants' breached the SEIU Constitution when imposing, administering, and maintaining the trusteeship for four reasons: (1) retroactively asserting that the internal charges hearing was also an internal needs hearing to circumvent the procedural requirements Article VIII, Section 7(f) of the SEIU constitution; (2) bad faith emergency situation; (3) Defendants failed to hold a trusteeship hearing within thirty days of appointment of the trustee, and the SEIU Executive Board failed to issue a decision within sixty days of imposition of the trusteeship; (4) the Notice Of Trusteeship Hearing was untimely, and unlawfully restrictive. Each will be discussed in detail below.

*i. Defendants Retroactively Asserted That The Internal Charges Hearing Was Also An Internal Needs Hearing To Circumvent The Procedural Requirements Article VIII, Section 7(f) Of The SEIU Constitution*

Article VIII, Section 7(f) of the SEIU Constitution requires a hearing on the need for imposing a trusteeship be held before appointment of a trustee except in an emergency situation. *See* SEIU Constitution, attached as **Exhibit "8,"** at 20. If an emergency trusteeship is imposed before a hearing is held, an emergency trusteeship hearing must be held in thirty (30) days, and a decision by the Executive Board must be made within sixty (60) days regarding the need of maintaining the trusteeship. *Id.* at 20-21. Article VIII, Section 7(g) of the SEIU Constitution permits the SEIU President to send a representative to meet with the local and attend meetings to

determine the internal needs of the local union, and a hearing officer to be appointed to assess the internal needs of a local. *Id.*

Article VIII, Section 7(f) illustrates the procedure to be followed when imposing a trusteeship on a local, including the need for an emergency trusteeship. Article VIII, Section 7(g) being included in a separate section of Article VIII indicates that they are separate sections to be used for separate purposes. Article VIII, Section 7(g) does not permit the International President to retroactively use a hearing on internal charges against union officers as a hearing on the internal needs of a local union and use the results of that hearing to circumvent the requirements of Section 7(f), which require a trusteeship hearing be held prior to the imposition of a trusteeship. *Id.*

The "Order of Emergency Trusteeship" asserts that SEIU President Henry "determined that there [was] justification to place Local 1107 into an emergency trusteeship, and that there [was] justification to place Local 1107 into trusteeship without first holding a hearing." *See* **Ex. 7,** at 1. However, a hearing was supposedly held regarding the "internal needs" of Local 1107 on October 29-30, 2016, and the results of that hearing is what led to this emergency trusteeship. Defendants failed to notice the Local 1107 membership that the internal charges hearing would also be a hearing on the internal needs of Local 1107 pursuant to Article VIII, Section 7(g) of the SEIU Constitution, and that emergency trusteeship could be recommended. *Id.*; *see also* **Ex. 1;** *see also* **Ex. 4,** at 1; *see also* **Ex. 5,** at 1. Defendants were provided with the charges against the board members in September of 2016, and sent notice to Local 1107 that it was assuming jurisdiction over the internal charges hearing on October 17, 2016, without mention of an internal needs hearing. *See* **Ex. 1,** at 1-2. The hearing was held on October 29-30, 2016, and the results of that hearing were used as justification for an emergency trusteeship six (6) months later without holding a trusteeship hearing.

Defendants then sent notice to Local 1107 on April 26, 2017, that it was sending representatives down to Local 1107 to attend a monthly board meeting pursuant to 7(g) without first noticing that trusteeship would be discussed. *See* **Ex. 6,** at 1. The representatives closed the meeting to the members of Local 1107 and then coerced the Local 1107 Executive Board into voting to allow an emergency trusteeship without having a hearing before the membership of Local

1107, without notice, and on the day the meeting was to be held, denying seventeen (17) board members the opportunity to attend the meeting. Defendants can provide no explanation why a trusteeship hearing pursuant to Article VIII, Section 7(f) of the SEIU Constitution could not have been held within the six (6) month time period they waited to issue the INRR and place Local 1107 into emergency trusteeship.

Instead of following the rules and procedures in the SEIU Constitution, Defendants retroactively asserted that the Consolidated Internal Charges Hearing was also a hearing on the internal needs of Local 1107 pursuant to Article VIII, Section 7(g) with the intent to circumvent the procedural requirements of Section 7(f) requiring a full and fair hearing before a trusteeship is imposed. *See* **Ex. 1;** *see also* **Ex. 4,** at 1; **Ex. 5,** at 1; **Ex. 7,** at 1. Retroactively labeling the internal charges hearing as a hearing on the internal needs of Local 1107, and subsequently using Section 7(g) to circumvent the hearing requirements in 7(f) is clear and convincing evidence that the emergency trusteeship over Local 1107 was imposed and maintained in bad faith, as no emergency situation existed, and Defendants failed to take action regarding the supposed emergency situation for six months, during which a hearing could have easily been held in accordance with the SEIU Constitution. Defendants' bad faith doesn't end there. Defendants also asserted that an emergency situation existed in bad faith.

*ii. Bad Faith Emergency*

"Emergency conditions" are a prerequisite to imposing an emergency trusteeship before a hearing can be held. *Higgins v. Harden*, 644 F.2d 1348, 1352 (9th Cir. 1981). "Congress recognized that the imposition of a trusteeship is an extraordinary intrusion into the affairs of a local union. . . [and] [s]uch a step should not be taken without a prior hearing, absent some necessity for immediate action." *Retail Clerks*, 479 F.2d at 55; *see also Rollison*, 615 F.2d at 792.

Neither Neiters, nor Henry assert what the emergency situation necessitating immediate action is in the INRR and the Trusteeship Order. President Henry simply recites the general requirements and conduct supposedly justifying imposition of the trusteeship. *See generally* **Ex. 7.** Hearing Officer Nieters also simply states in the INRR that "[w]ithout immediate intervention, the Local Union will remain in crisis at the expense of membership. Because the circumstances as

they were presented to me at the hearing fully justify the imposition of an emergency trusteeship, I recommend that President Henry consult with counsel and consider that course of action." *See* **Ex. 5,** at 2. Without citation to a specific emergency condition necessitating immediate action, imposition of an emergency trusteeship is illegal, and injunctive relief ending the trusteeship is required. 29 U.S.C. § 462, 464; *Retail Clerks*, 479 F.2d at 55; *Higgins*; 644 F.2d at 1352; *Rollison*, 615 F.2d at 792.

*iii. Defendants Failed To Hold A Trusteeship Hearing Within Thirty Days Of Appointment Of The Trustee, And The SEIU Executive Board Failed To Issue A Decision Within Sixty Days Of Imposition Of The Trusteeship*

Article VIII, Section 7(f) of the SEIU Constitution requires that a trusteeship hearing be held within thirty days of the imposition of an emergency trusteeship. *See* **Ex. 8,** at 20. Similarly, the Trusteeship Order states that "[c]onsistent with the requirements of Article VIII, Section 7(f) of the SEIU Constitution, I will request that the International Executive Board appoint a hearing officer and that a notice of hearing be issued in the near future. Pursuant to that provision of the SEIU Constitution, a hearing regarding the SEIU's imposition of an emergency trusteeship over Local 1107 shall be held within thirty (30) days from the imposition of this trusteeship." *See* **Ex. 7,** at 3.

The Trusteeship Order was sent out to Local 1107 on April 28, 2017. Thus, Defendants were required to hold the trusteeship hearing thirty (30) days after, on May 28, 2017. Defendants failed to notice and hold the trusteeship hearing within thirty (30) days of the imposition of the emergency trusteeship pursuant to the SEIU Constitution and the Trusteeship Order. This alone is sufficient basis to invalidate the trusteeship. 29 U.S.C. § 464; *Retail Clerks*, 479 F.2d at 55; *Higgins*; 644 F.2d at 1352; *Rollison*, 615 F.2d at 792.

On June 7, 2017, over a week after the deadline to hold the trusteeship hearing had passed, a hearing regarding the removal of a law suit filed by Local 1107 members against SEIU to invalidate the emergency trusteeship was held before Judge Andrew Gordon in the United States District Court District of Nevada. *See* Removal Hearing Transcript, attached as **Exhibit "9,"** at 1. During this hearing, Judge Gordon informed defense counsel that the thirty (30) day period to hold the trusteeship hearing had expired.

Defense counsel initially believed the deadline for the hearing had not yet passed (**Ex. 9,** at 24:8-24) and then excused the fact that it had passed by suggesting that there were scheduling conflicts. *Id.* at 71:8-25. Despite this, Defendants again failed to issue notice regarding their failure to hold the hearing in thirty days. Further, while the SEIU Constitution does provide the SEIU President with the authority to extend deadlines, such deadlines can only be extended for good cause. *See* **Ex. 8,** at 20. SEIU President Henry failed to issue notice that the hearing date would be extended outside thirty days as reqired by the SEIU Constitution and stated in the Trusteeship Order. Almost a month later, on July 3, 2017, the day before a holiday weekend and sixty six (66) days after imposition of the trusteeship, Defendants issued an untimely Notice of Trusteeship Hearing. *See* Notice of Trusteeship Hearing, attached as **Exhibit "10,"** at 1. The Notice of Trusteeship hearing retroactively asserted that the International President had found good cause to postpone the hearing two weeks before the hearing before Judge Gordon when defense counsel was apprised of the fact that the thirty (30) day window had passed:

> On May 25, 2017, under her express authority under Article VIII, Section 7(f) of the SEIU Constitution, the International President determined that good cause existed to hold the Local 1107 trusteeship hearing more than 30 days after the imposition of the trusteeship- in light of Local 1107's pending commitments and the schedules of the individuals whose attendance at the hearing was necessary. The International President also determined that good cause existed for the International Executive Board's decision on the trusteeship to be made more than 60 days after the trusteeship was imposed.

*Id.* at 2.

Defendants have provided no explanation as to what good cause warranted postponing the hearing, nor why notice was not sent to Local 1107 in a timely fashion regarding good cause to postpone the trusteeship hearing. The notice itself states that "[t]he hearing is informal and is not intended to be a formal legal proceeding. It is not necessary for a party to be represented by an attorney in order to participate." *Id.* at 3. By Defendants' own admission, Rothner's attendance at the hearing was not necessary.

Further, retroactively sending out a notice that the International President found good cause to postpone the trusteeship hearing after their counsel was informed by Judge Gordon that the thirty (30) day window had passed is clear and convincing evidence of bad faith. The emergency

trusteeship hearing was held on July 13, 2017, seventy-six (76) days after the appointment of the Trustee, and Defendants again failed to establish a good faith emergency situation necessitating the imposition and continuation of the emergency trusteeship, and failed to establish good cause for not holding the hearing within thirty (30) days after the trustee was appointed pursuant to the SEIU Constitution. *Id.* It is unknown whether Mr. Rothner attended the hearing.

Additionally, pursuant to the SEIU Constitution Article VIII, Section 7(f) the SEIU Executive Board was required to render a decision regarding the merits of the emergency trusteeship within sixty (60) days after the appointment of the Trustee. *See* **Ex. 8,** at 20. Defendants breached the SEIU Constitution on June 27, 2017, by failing to follow the procedures in the SEIU Constitution that require the SEIU Executive Board to issue a decision on the merits of the emergency trusteeship within sixty (60) days of the appointment of the Trustee on April 28, 2017. *Id.* Even if this Court is inclined to accept the supposed good cause retroactively asserted by Henry in the Notice of Trusteeship Hearing, the excuse that "Local 1107's pending commitments and schedules of the individuals whose attendance at the hearing was necessary," does nothing to justify the SEIU Executive Board's failure to issue a decision on the trusteeship within sixty days of appointment of the trustee because the SEIU Executive Board did not attend the hearing. *See* **Ex. 10,** at 2. Because Defendants failed to administer the emergency trusteeship in accordance with the SEIU Constitution, injunctive relief is warranted.

*iv. The Notice Of Trusteeship Hearing Was Untimely And Unlawfully Restrictive*

Pursuant to the SEIU Constitution, the SEIU President was required to issue timely notice of the emergency trusteeship hearing to the membership of Local 1107 within thirty (30) days of appointment of the trustee. *See* **Ex. 8,** at 20. The Trusteeship Order stated that the trusteeship hearing would be "held within thirty (30) days from the imposition of this trusteeship," and that notice of the date of the hearing would "be issued in the near future." *See* Trusteeship Order, attached as **Exhibit 7,** at 3. No notice was sent to Local 1107 and no trusteeship hearing was held within thirty (30) days of imposition of the trusteeship.

On July 3, 2017, seventy-six (66) days after imposition of the trusteeship, Defendants issued the Notice of Trusteeship Hearing. However, instead of sending out the Notice of

Trusteeship Hearing to the membership of Local 1107, Defendants sent the untimely Notice of Trusteeship Hearing only to the former members of the Local 1107 Executive Board, whom they had disbanded over two (2) months earlier, the day before a holiday weekend when many people are scheduled to be out of town. *See* Notice of Trusteeship Hearing Email, 7/3/17, attached as **Exhibit "11,"** at 1. The Notice was provided just nine (9) days prior to the date of the hearing, one day less than the lowest minimum time period of ten (10) days for notice found in the SEIU Constitution. Defendants also failed to notice all the former Local 1107 Executive Board members who were suing to invalidate the trusteeship that the trusteeship hearing was going to be held on July 13, 2017.

The Notice required the disbanded executive board to send the Trusteeship Hearing Notice to the membership, and as such, most of Local 1107 did not even get the nine (9) days notice of the hearing. *Id.* The Notice also required the disbanded members of the Local 1107 Executive Board to secure a majority vote in less than (10) days, and over a holiday weekend, for them to be represented by a spokesperson at the trusteeship hearing who could present evidence and call and cross-examine witnesses. *Id.* Because of this unreasonable restriction on the Local 1107 membership, a spokesperson was not appointed, and Local 1107 was denied their right to present evidence, and call and cross-examine witnesses. Defendants' untimely and unreasonably restrictive Notice denied the Local 1107 membership a full and fair hearing constituting a denial of due process.

Further, when the trusteeship hearing was actually held, the hearing officer did not address the emergency situation, nor the need to maintain the trusteeship, and instead held a second trial of the Local 1107 Board members who were removed from office. Because Defendants have failed to administer and maintain the trusteeship in accordance with the SEIU Constitution, Plaintiffs are entitled to an order enjoining SEIU from maintaining the trusteeship.

***b. The Emergency Trusteeship Was Imposed In Bad Faith For An Improper Purpose***

Trusteeships may be imposed only for specific reasons: "[1] correcting corruption or financial malpractice, [2] assuring the performance of collective bargaining agreements or other

duties of a bargaining representative, [3] restoring democratic procedures, or [4] otherwise carrying out the legitimate objects of such labor organization." 20 U.S.C. § 462.

Hearing Officer Nieters argues the general reasons for imposition of the emergency trusteeship in the INRR. *See generally* **Ex. 5.** While Nieters' justifications seem to superficially conform with the statutory requirements of 29 U.S.C.§ 462, the justifications asserted for imposition of the trusteeship were not made in good faith, and do not support imposition of an emergency trusteeship.

For example, Hearing Officer Nieters explains in the INRR that "[t]he record clearly demonstrates that there has been an ongoing and serious breakdown in internal union governance and democratic procedures at Local 1107 for some time, stemming from conflicts among warring factions on the Local Executive Board. . . the inability to maintain order and resolve even routine conflict prevents Local 1107's leaders from completing the core work that Local 1107's members have elected them to do." *See* **Ex. 5,** at 2. However, Nieters fails to provide any actual examples of Local 1107 not finishing its business. Nieters lists two specific instances of business not being completed: (1) financial reports were not reviewed or approved at an October 2016 board meeting; and (2) "the August 31, 2016 Meeting was not adjourned by motion, rather it dissipated and collapsed due to what the minutes describe as 'situations.'" *Id.* at 3, 4. The Local 1107 financial reports were reviewed, approved and submitted to the Secretary of Labor on March 31, 2017, the date they always file the reports, and before imposition of the emergency trusteeship. *See* 2016 Financial Report, 3/31/17, attached as **Exhibit "12."** Failure to adjourn a single meeting on motion is not a legitimate example of a breakdown of the democratic process sufficient to warrant imposition of a trusteeship.

Nieters also found that the charges against the board that related to disorderly board meetings were not cognizable charges:

> I do not separately address charges which, even assuming them to be true, ***reflect poor administrative practices, mere differences in opinion, or possibly a culture of disrespectful treatment***. ***These may represent less than best practices, <u>but I do not find that they rise to the level of "gross inefficiency" or "failure to perform duties"</u> within the meaning of the SEIU or Local 1107 Constitutions and Bylaws, nor do they constitute cognizable charges thereunder***. Illustrative examples in Sister Mancini's case include allegations of ***failing to prepare for or conduct***

> ***Executive Board meetings to the satisfaction of Charging Parties*** (e.g., Tr. 1 at 35-37);

*See* **Ex. 4,** at 6-7.

If disorderly board meetings was not enough to sustain charges against any of the Local 1107 Executive Board members, it certainly is not sufficient to impose an trusteeship over Local 1107 without specific examples of union objectives not being completed. Further, a simple breakdown in union governance, while possibly a reason to implement a trusteeship, is not an emergency situation sufficient to impose an emergency trusteeship without first holding a hearing in accordance with the SEIU Constitution, Article VIII, Section 7(f).

Nieters also argued that "[t]he leadership conflicts in the Local are the root of a pattern of instability and uncertainty that interferes with Local 1107's ability to carry out its most basic collective bargaining responsibilities properly and effectively." *See* **Ex. 5,** at 4. However, Nieters could not provide a single example of a collective bargaining responsibility not being met. Rather, she cites that President Mancini's postponement of the UMC CBA ratification vote as an example of Local 1107 failing to meet its basic collective bargaining responsibilities. *Id.* The UMC CBA ratification vote was ratified on July 29, 2016, within the time period originally requested:

> [O]n July 25, she unilaterally reduced the proposed three-day voting period to a single day.
>
> . . .
>
> Ultimately, Sister Mancini restored the ratification vote, and the agreement was approved by the members.

*See* **Ex. 4,** at 14. 15; *see also* **Ex. 7,** at 2.

There was no delay in the ratification vote for the UMC CBA, and any disruption in the time allotted for ratification was minimal, and Local 1107 has consistently met all collective bargaining obligations during Mancini's tenure as President of Local 1107. Without a specific example of a CBA being breached, threatened to be breached, or a duty not being met, there is no justification to impose an emergency trusteeship.

Next, Nieters argues that "a wider communication breakdown in the Local has interfered with the ability of members and leaders to carry out their collective bargaining duties properly." *Id.* at 5. Again, Nieters fails to list a single example of a CBA being breached, threatened to be

breached, or any CBA duty not being met. Further, breakdown in communication is not a basis for imposing a trusteeship, and certainly not an emergency justifying imposition of a trusteeship before a hearing could be held. Later, Nieters argues that "[t]he record also shows that inadequate communication has caused confusion and impeded staff oversight." *Id.* at 7. Again, Nieters does not provide a single example of work not getting accomplished, and instead focuses on conflicting tasks given to Local 1107 employees. The Local 1107 staff is not part of the governing body of Local 1107, thus any issues with communication with staff members has no effect on democratic procedures of Local 1107.

Nieters then argued that "Sister Kisling violated the Local Union Constitution by usurping President Mancini's authority to hire and fire Local staff when she attempted to terminate a Local staff person while the President was on vacation" as a basis for imposing the trusteeship. *See* **Ex. 5,** at 9. While this allegation may be true, it does not demonstrate a breakdown in democratic governance, and the appropriate course of action was removing Kisling from her position as Executive Vice President of Local 1107. A board member trying to fire staff is outside the scope of permissible purposes to impose a trusteeship pursuant to 29 U.S.C. § 462. Further, it is not something necessitating immediate action warranting emergency trusteeship before a hearing is held. Finally, Nieters alleges that conflicting provisions of a Local Constitution are basis for imposition of the trusteeship, but this is outside the scope of permissible reasons to impose a trusteeship pursuant to 29 U.S.C. § 462, and certainly not a justification for an emergency trusteeship before a hearing could be held.

None of the reasons asserted in the INRR establish a good faith emergency situation because none existed. Waiting six (6) months to impose the emergency trusteeship evidences that fact. *See International Bhd. of Teamsters, Local Union 107 v. International Bhd. of Teamsters,* 935 F. Supp. 599, 603 (E.D. Pa. Aug. 20, 1996) (bad faith found for imposing a trusteeship where alleged wrongful union acts had taken place at least 8 months before date of report on which president relied in making his decision, there were no current examples of illegality). Defendants can provide no explanation why a trusteeship hearing pursuant to Article VIII, Section 7(f) of the SEIU Constitution could not have been held within the six (6) month time period they waited to

issue the report and recommendation to place Local 1107 into emergency trusteeship. Further, Nieters does not list any recent issues regarding Local 1107's governance that warranted imposing the emergency trusteeship. Failure to hold a trusteeship hearing to determine the need of appointing a trustee pursuant to Article VIII, Section 7(f) in the six (6) months between the internal charges hearing and imposition of the emergency trusteeship is clear and convincing evidence of bad faith. As such, Plaintiffs have demonstrated a high likelihood of success on the merits and are entitled to an order enjoining SEIU from maintaining the trusteeship.

**C. <u>Plaintiffs Have Suffered And Will Continue To Suffer Irreparable Harm If Defendants Are Allowed To Continue To Exercise Control Over Local 1107.</u>**

The next element this Court must consider is irreparable harm. *Winter*, 129 S. Ct. at 375-76. 29 U.S.C. § 412 provides that:

> Any person whose rights secured by the provisions of this title [29 USCS §§ 411 et seq.] have been infringed by any violation of this title [29 USCS §§ 411 et seq.] may bring a civil action in a district court of the United States for such relief (***including injunctions***) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

29 USCS § 412.

"Union members' rights under the LMRDA 'deserve[] vigorous protection.'" *Savage v. Tweedy*, 526 Fed. Appx. 765, 767 (9th Cir. 2013). Similarly, 29 USCS § 464 also authorizes federal courts to issue injunctions to prevent maintenance of illegal trusteeship. 29 U.S.C. § 464(a). *See Retail Clerks*, 479 F.2d at 55; *Hotel & Rollison*, 615 F.2d at 793. Removal of an officer from elected office, and disciplining members for exercising their free speech rights guaranteed by the LMRDA are irreparable injuries for which money damages are not an adequate remedy. *Savage*, 526 Fed. Appx. at 767*citing Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354-55 (1989) ("[T]he potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged. Not only is the fired official likely to be chilled in the exercise of his own free speech rights, but so are the members who voted for him.").

Here, Plaintiffs' Complaint is primarily for injunctive relief and compensatory damages for the improper removal of Local 1107 President Mancini and imposition of an illegal trusteeship over Local 1107. As such, evidence that an International Union has denied a member rights

guaranteed under 29 U.S.C. § 411, or 29 U.S.C. § 464 is evidence of irreparable injury sufficient to justify granting injunctive relief in Plaintiffs' favor. Defendants denied Plaintiff Mancini and Local 1107 their right to a full and fair hearing regarding Mancini's discipline, and the imposition of the emergency trusteeship resulting in a denial of due process. Defendants also illegally disciplined Mancini for engaging in protected speech. Because Plaintiff Mancini was removed from office for engaging in protected speech at the request of Local 1107 members of the UMC unit, her removal has a chilling effect not only on Mancini's rights as a member, but also those who voted for her, and those who requested she intervene in the UMC CBA ratification vote due to lack of transparency and access to their union.

Similarly, Defendants have denied Local 1107 their rights guaranteed by the SEIU Constitution and the LMRDA by imposing an illegal trusteeship over Local 1107. Local 1107 has been denied their right to representation and democratic governance by the officials they have elected to the Local 1107 Executive Board and their right to due process for Defendants' failure to impose the emergency trusteeship in good faith, for a proper purpose and in accordance with the SEIU Constitution. Because the trusteeship was imposed on Local 1107 illegally, thereby denying the Local 1107 membership its rights protected under the SEIU Constitution and the LMRDA, Plaintiffs have demonstrated irreparable injury sufficient to warrant injunctive relief by this Court.

**D. <u>The Balance Of Equities And Public Interest Both Tip In Plaintiffs' Favor.</u>**

The third factor when considering injunctive relief "requires the court 'to balance the interests of all parties and weigh the damage to each.'" *United Food & Commer. Workers Local 99 v. Brewer*, 817 F. Supp. 2d 1118, 1127 (D. Ariz. Sept. 23, 2011) *citing L.A. Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). The fourth factor for determining whether an injunctive is whether it would be in the public interest. *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). To determine what is in the public's interest, the Court must address the "impact on non-parties rather than parties." *Id.* The public interest analysis for the issuance of injunctive relief "requires [the court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Rubin*

*ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1107 (C.D. Cal. 2015). The public has a strong interest in preserving its freedom of association. *Sammartano*, 303 F.3d at 974.

> ***Union members' rights under the LMRDA 'deserve[] vigorous protection***.' *Sadlowski*, 457 U.S. at 112. While these individual rights must be balanced against unions' interest in 'self-government,' *id.* at 117, the gravity of the UBC's interests is undermined by the fact that it did not enforce existing rules, but rather sought to impose ex post facto restrictions on Appellants' conduct. Under these circumstances, both the balance of the equities and the public interest favor injunctive relief.

*Savage v. Tweedy*, 526 Fed. Appx. 765, 767 (9th Cir. 2013) (emphasis added.)

Here, the balance of hardships and public interests tips in the Plaintiffs' favor. The harm to Plaintiffs is ongoing as Defendants continue to deny Local 1107 their rights protected by the LMRDA and the SEIU Constitution. The harm of failing to provide immediate redress for Local 1107 members will have a chilling effect on Local 1107's members' willingness to express dissent that is essential to democracy. This harm to Plaintiffs is far greater than that of Defendants because absent injunctive relief, Plaintiffs' rights protected under the LMRDA will continue to be violated and curtailed. There is no emergency situation that warranted immediate intervention into Local 1107's affairs, and enjoining Defendants from maintaining the trusteeship poses no hardship to SEIU, especially given the fact the SEIU failed to enforce its own rules. Failing to reinstate Mancini's membership and enjoin maintenance of the trusteeship has and will continue to deny the members of Local 1107 their right to be governed by the officers they elected.

Like in *Savage*, the situation presented before this Court tips the balance of hardships and the public's interest in favor of Plaintiffs because Local 1107's members' rights are being violated and denied, and rights under the LMRDA deserve vigorous protection. Further, like in *Savage*, while the public interest could arguably tip in Defendants' favor because democratic self-governance of a union is in the public's interest, Defendants' failure to follow and enforce rules in their own constitution significantly undermines this interest, tipping the public's interest in favor of Plaintiffs. As such, this Court should grant Plaintiffs' request for injunctive relief and enjoin Defendants from maintaining the trusteeship.

//

//

## III.

## NO BOND OR ONLY A MINIMAL BOND SHOULD BE REQUIRED

SEIU suffers no real harm from having to turn over control of Local 1107 to the Executive Board. Courts have repeatedly refused to require bonds when there is no realistic likelihood of harm:

> The Ninth Circuit has held that it [FRCP Rule 65] "invests the district court with discretion as to the amount of security required, if any." *Johnson v. Courturier*, 575 F.3d 1067, 1086 (9th Cir. 2009). A district court need not require a bond "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

*United Food & Commercial Workers v. Brewer*, USDC Ariz. Case No. No. CV-11-921-PHX-GMS (Sept. 23, 2011).

Moreover, even if somehow the SEIU could show some financial harm, the parties' continuing relationship provides SEIU with a ready means of recoupment, also warranting no bond here:

> As a result of the parties' ongoing financial relationships, the bond requirement is also properly waived since defendants are capable of recouping any costs or damages resulting from the wrongful issuance of the injunction. See e.g. *United States v. Bedford Assocs*., 618 F.2d 904, 916–17 (2nd Cir.1980) (holding that where the defendant is able to receive compensation for costs or damages, resulting from the wrongful issuance of the injunction, by virtue of amounts it owes the plaintiff through the parties' ongoing financial relationship, no security is required).

*California Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 2d 1129, 1160 (E. D. Cal. 2011).

Finally, a significant bond here would prevent the harm to Plaintiffs and Local 1107 from being cured, as Plaintiffs' association is a small one without significant assets, and this suit is currently being funded out of pocket by the members. See *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) ("The district court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review").

## IV.

## CONCLUSION

Without granting this TRO, Defendants will continue to exercise unlawful control over Local 1107, deny members their rights protected under the SEIU Constitution and the LMRDA,

dispense of property and funds without accounting by Local 1107's Board, terminate staff members, cancel and enter into contracts with third parties without input from the Board or members, and refuse to hold elections mandated by the Local 1107 Constitution. Therefore, based on the foregoing, Plaintiff respectfully requests this Court GRANT Plaintiff's Ex Parte Application for Temporary Restraining Order on Order Shortening Time. Specifically, Plaintiff respectfully requests the following order:

- Enjoining and restraining Defendants from further directing, managing, and controlling the affairs of the Nevada Service Employees Union, or interfering with Local 1107's right of self-governance, and for an order mandating that the trustee immediately restore control of all property, rights, powers and control of Local 1107 to the Board.

Dated this 10th day of August 2017

/s/ Michael J. Mcavoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of August, 2017, the undersigned served the foregoing **PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER ON ORDER SHORTENING TIME** on all counsel herein by causing a true copy thereof to be filed with the Clerk of Court using the CM/ECF system, which was served via electronic transmission by the Clerk of Court pursuant to local order.

CHRISTENSEN JAMES & MARTIN
EVAN L. JAMES, ESQ. (7760)
KEVIN B. ARCHIBALD, ESQ. (13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
Email: elj@cjmlv.com, kba@cjmlv.com
Attorneys for Defendant Service Employees International Union

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHER (PRO HAC VICE)
JONATHAN COHEN (10551)
510 South Marengo Avenue
Pasadena, CA 91101-3115
Tel: (626) 796-7555
Facsimile: (626) 577-0214
Email: grothner@rsglabor.com, jcohen@rsglabor.com
Attorneys for Defendant Service Employees International Union

Dated this 10th day of August, 2017.
/s/ Michael J. Mcavoyamaya

______________________________
MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*