MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**
*** * * ***

| | |
|---|---|
| CHERIE MANCINI, individually; and FREDERICK GUSTAFSON as a member, and on behalf of CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION; CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka Local 1107, a non-profit cooperative corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as trustee; MARY K. HENRY, in her official capacity as Union President; DOES; and ROE CORPORATIONS 1-20, inclusive,<br><br>Defendants. | CASE NO.: 2:17-cv-02137<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONS RE: PRELIMINARY AND PERMENANT INJUNCTION ON AN ORDER SHORTENING TIME** |

COME NOW, Plaintiffs, by and through their attorney of record, MICHAEL MCAVOYAMAYA, ESQ., and hereby submits Plaintiffs' Reply to Defendants Opposition Re: Plaintiffs' Motion for Preliminary and Permanent Injunction.

Dated this 31st day of August, 2017.

/s/ Michael J. Mcavaoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**LEGAL ARGUMENT**

Defendants' Opposition is an attempt to misdirect the Court's focus on the issues relevant to Plaintiffs' Motion for Preliminary Injunction ie: whether the trusteeship over Local 1107 was done in accordance with the LMRDA and the SEIU Constitution, to other irrelevant issues relevant to the companion suit alleged under state law and based on the Affiliation Agreement between SEIU and Local 1107, the coerced vote of the Local 1107 executive board on April 26, 2017, and irrelevant issues brought up in the July 13, 2017 trusteeship hearing, which were not the basis for the imposition of this emergency trusteeship. As such, this reply will seek to direct the Court attention to the issues raised by Plaintiffs' Motion and relevant to determining if an injunction is necessary. This Court must examine three overarching issues when determining whether an injunction is proper: (1) whether the presumption of validity of the trusteeship applies; (2) whether the trusteeship was authorized/ratified by a fair hearing; and (3) whether the trusteeship imposed for a permissible purpose under the LMRDA. Each will be discussed in detail below.

**A. Whether The Presumption Of Validity Applies To This Trusteeship.**

Imposing a trusteeship is "an extraordinary intrusion into the affairs of a local union." *Retail Clerks Union v. Retail Clerks International Asso.*, 479 F.2d 54, 55 (9th Cir. 1973). There is a presumption of validity of a trusteeship that applies so long as the trusteeship is administered in accordance with the international constitution. 29 U.S.C. 464(c). A trusteeship will be presumed valid "when it is . . . imposed in a procedurally correct manner." *Argentine v. USW*, 287 F.3d 476, 482 (6th Cir. 2002). Plaintiff members can challenge the validity of a trusteeship by asserting that the parent union did not impose the trusteeship in accordance with the procedural requirements of the parent union's constitution and by-laws, or by clear and convincing evidence that the trusteeship was not imposed for a permissible purpose delineated in 20 U.S.C. § 462. *Argentine*, 287 F.3d at 482.

> The constitution and bylaws of a labor organization may require a prior hearing or some other pre-imposition procedure. ***Such procedures must be followed if the trusteeship is to be established "only in accordance with the constitution and***

> ***bylaws of the organization" imposing the trusteeship***. Cf. *United Bro. of Carpenters & Joiners of America v. Brown*, 343 F.2d 872 (10th Cir. 1965) (trusteeship not authorized by constitution of international and not imposed for allowable purpose); *Local U. 13410, United Mine Workers v. United Mine Workers*, 154 U.S.App.D.C. 322, 475 F.2d 906 (1973) (*all practical steps must be taken to afford a hearing before a trusteeship is imposed*); *Bailey v. Dixon*, 429 F.2d 1321 (5th Cir. 1970) (a district judge has discretion to decide whether a hearing should precede or follow the trusteeship).

*Tam v. Rutledge*, 475 F. Supp. 559, 562 (D. Haw. Aug. 20, 1979).[1]

Plaintiffs have challenged the imposition of this emergency trusteeship over Local 1107 first by presenting evidence that this trusteeship was not imposed in accordance with the procedural requirements of the SEIU Constitution. *See Generally* Complaint. Specifically, Defendants breached the SEIU Constitution when imposing, administering, and maintaining the trusteeship for four reasons: (1) retroactively asserting that the internal charges hearing was also an internal needs hearing to circumvent the procedural requirements Article VIII, Section 7(f) of the SEIU constitution; (2) bad faith emergency situation; (3) Defendants failed to hold a trusteeship hearing within thirty days of appointment of the trustee, and the SEIU Executive Board failed to issue a decision within sixty days of imposition of the trusteeship; (4) the Notice Of Trusteeship Hearing was untimely, and unlawfully restrictive.

Defendants seem to admit that procedural violations occurred stating that "Plaintiffs merely rehash the procedural violations we have previously addressed." *See* Defendants' Opposition, (#12), at 12:5-6. However, Defendants avoid directly addressing these procedural failures because it is fatal to their argument. For example, they cite to the SEIU Constitution stating that the "purposes for imposing a trusteeship are taken verbatim from Title III of the LMRDA, 29 U.S.C. § 462," but fail to include the parts of the SEIU Constitution that outlines the procedure to be followed when imposing both trusteeships and emergency trusteeships. *Id.* at 4:20-28.

Article VIII, Section 7(f) of the SEIU Constitution requires a pre-trusteeship hearing "[i]n order to ensure that no trusteeship is imposed without an adequate right to be heard or without other appropriate safeguards." *See* SEIU Constitution, attached as **Exhibit "8"** to Plaintiffs'

[1] It should be noted that Defendants have cited to this case in their Opposition. *See* Defendants' Opposition, (#12), at 6:11-12.

Motion, at 20. Only in an emergency can a trusteeship be imposed before a hearing is held. *Id.* If an emergency trusteeship is imposed before a hearing is held, an emergency trusteeship hearing must be held in thirty (30) days, and a decision by the Executive Board must be made within sixty (60) days regarding the need of maintaining the trusteeship. *Id.* at 20-21. None of these procedures have been followed by the Defendants.

The federal courts are consistent in holding that "***absent a reasonable belief in the necessity for <u>immediate action</u>, all practical steps <u>must be taken</u> to afford a hearing before a trusteeship is imposed***." *Retail Clerks Union v. Retail Clerks International Asso.*, 479 F.2d 54, 55 (9th 1973); *see also U.M.W. Local 13410 v. U.M.W.*, 475 F.2d 906 (D.C. Cir., 1973) (emphasis added.) Defendants were apprised of the supposed emergency situation used as a basis for this emergency trusteeship in September of 2016. *See* Kisling Charges, attached as **Exhibit "2"** to Plaintiff's Motion, at 1; *see also* Marzan Charges, attached as **Exhibit "3"** to Plaintiffs' Motion, at 1. Instead of holding a pre-trusteeship hearing when SEIU assumed jurisdiction over the charges against the Local 1107 officers, Defendants' held an "internal needs" hearing, which addressed the need of imposing a trusteeship over Local 1107 as requested by the witnesses called by SEIU at the internal needs hearing. *See* Internal Needs Hearing Transcript, attached as **Exhibit "1,"** at 17:6-11; 37:20-24; 55:18-21; 58:3-6. After the two day hearing on October 29-30, 2016, SEIU waited six months to issue the reports and recommendations. Unsurprisingly, the INRR recommended that a trusteeship be imposed. It is patently obvious that the internal needs hearing pursuant to Section 7(g) was used to circumvent the procedural requirements of 7(f). The hearing addressed the need for imposing a trusteeship, and the report from that hearing recommended a trusteeship be imposed. Further, the seven (7) month gap between when SEIU became aware of the issues supposedly necessitating immediate action via emergency trusteeship and the decision to impose an emergency trusteeship renders their assertion of an emergency completely frivilous.

On April 26, 2017, SEIU sent SEIU Executive Vice President Neal Bisno, SEIU Deputy Chief of Staff Deedee Fitzpatrick, SEIU Staff Member Kathy Eddy, and SEIU General Counsel Steve Ury to Local 1107 to close the monthly board meeting off to members and to coerce a vote to permit imposition of a trusteeship over Local 1107. Defendants have provided no excuse for

why a hearing could not have been held that day or several days after for imposition of this emergency trusteeship. Rather, Defendants sprung the need to impose a trusteeship on the Local 1107 board the day notice went out to Local 1107 that SEIU representatives would be attending the monthly board meeting and without notice that trusteeship would be the focus of their attendance because, as Defendants put it in their Opposition, "there remains a possibility that the local union's executive board, having first requested a trusteeship, will reconsider and take the opposite position." *See* Defendants' Opposition, (#12), at 8:8-10.

Defendants' also suggest that they failed to impose the emergency trusteeship over Local 1107 for seven (7) months because the Affiliation Agreement between SEIU and Local 1107 required a vote. *See* Defendants' Opposition, (#12), at 7:3-10. This assertion is disingenuous for several reasons. First, they could have gone down to Local 1107, or had the International officers that were already there, Mary Grillo and Steve Ury, request the vote at that time. Second, Defendants didn't apprise Local 1107 of the existence of the Affiliation Agreement at the meeting, instead representing to the Local 1107 Executive Board that they had no choice but to vote for trusteeship. Finally, it should noted that the 1984 SEIU Constitution, which was in effect when the Affiliation Agreement was entered into, didn't contain a Section 7(g), and should thus be presumed to waive all the provisions of the trusteeship Section, including the internal needs section. *See* Affiliation Agreement, attached as **Exhibit "1,"** at 10; *see also* SEIU Constitution 1984, attached as **Exhibit "2,"** at 27.

The "procedural violation" Defendants assert that Plaintiffs seek to "rehash" was their failure to hold the post-trusteeship ratification hearing within thirty (30) days of imposition of the emergency trusteeship, which fell on May 28, 2017 as noted by Judge Gordon in the remand hearing. *See* Defendants' Opposition, (#12), at 12:4-6. Defendants assert that Plaintiffs' "neglect to point out, however, that SEIU's International President determined that" there was good cause to extend the thirty (30) and sixty (60) day deadlines included in Article VIII Section 7(f). Plaintiffs clearly pointed out that SEIU President Henry found good cause to extend the deadline, the problem is she retroactively back dated this finding without proper notice to Local 1107. *See* Plaintiffs' Motion, (#5), at 13:10-12; *see also* Notice of Trusteeship Hearing, attached as **Exhibit**

**"10"** to Plaintiffs' Motion, at 2. Defendants attempt to gloss over this fact and cover for their clients' mistake by implying that the SEIU Constitution doesn't bar President Henry from retroactively finding good cause and that SEIU is entitled to deference in reasonable interpretations of their Constitution. *See* Defendants' Opposition, (#12), at 9:1-4.

Plaintiffs do not argue that a parent union is entitled to deference with respect to "plausible" or "reasonable" interpretations of their own constitution. *Id.* at 5:25-28 – 6:1-3. The problem here is that their interpretation is not plausible or reasonable. To permit Defendants to retroactively assert good cause for extending the procedural deadlines in the SEIU Constitution, especially for such a vague and unconvincing reason, would render the time period restrictions unenforceable. In fact, SEIU President Henry has utilized this same vague boilerplate language to excuse procedural failings when imposing trusteeships on other locals. On February 14, 2017, SEIU President Henry imposed an emergency trusteeship over Local HCMI. *See* Local HCMI Notice of Trusteeship Hearing, attached as **Exhibit "3,"** at 1. SEIU sent out the notice on or about April 13, 2017, almost two full months after imposition of the emergency trusteeship. *Id.* Like the Notice of Trusteeship Hearing sent to Local 1107, the Local HCMI notice includes the exact same boilerplate paragraph about "scheduling conflicts," retroactively backdated to fall within thirty (30) days of imposition of the emergency trusteeship:

> On March 14, 2017, under her express authority under Article VIII, Section 7(f) of the SEIU Constitution, the International President determined that good cause existed to hold the hearing more than 30 days after the imposition of the trusteeship over Healthcare Michigan, in light of Healthcare Michigan's pending commitments and the schedules of the individuals whose attendance at the emergency trusteeship hearing is necessary. The International President also determined good cause existed for the International Executive Board's decision on the trusteeship to be made more than 60 days after the trusteeship was imposed.

*Id.*; *see also* Notice of Trusteeship Hearing attached as **Exhibit "10"** to Plaintiffs' Motion, at 2.

Similarly, on August 3, 2016, SEIU President Henry imposed an emergency trusteeship over SEIU Local 73. *See* Local 73 Notice of Trusteeship Hearing, attached as **Exhibit "4,"** at 1. In this case, SEIU sent the notice within the thirty (30) day time period as required for the time

period provision to be enforceable. Regardless, the Local 73 notice contains the exact same vague boilerplate excuse as Local HCMI and Local 1107:

> On August 19, 2016, under her express authority under Article VIII, Section 7(f) of the SEIU Constitution, the International President determined that good cause existed to hold the hearing on September 24, 2016 - more than 30 days after the imposition of the trusteeship over Local 73 - in light of Local 73's pending commitments and the Labor Day holiday conflicts affecting the individuals whose attendance at the emergency trusteeship hearing is necessary and to maximize the opportunity for members [to] participate in the hearing after the summer holidays. The International President also determined good cause existed for the International Executive Board's decision on the trusteeship to be made more than 60 days after the trusteeship was imposed.

*Id.*

The excuse asserted by defense counsel Rothner at the hearing before Judge Gordon is the same vague, unconvincing, boilerplate excuse Defendants assert every time they don't want to follow their own constitution in imposing an emergency trusteeship on a local affiliate. Further, if this Court were to accept this unconvincing excuse, and Defendants' retroactively back dating good cause, it would render the procedural time period limitations of Article VIII Section 7(f) unenforceable. As such, this excuse and Defendants' interpretation of this provision of the SEIU Constitution, is wholly unreasonable and should be afforded no deference whatsoever.

The final excuse that Defendants assert for their procedural failures is that the SEIU Constitution doesn't expressly require that SEIU notice the membership of Local 1107, and thus only the disbanded Local 1107 Executive Board is entitled to notice and the right to present evidence and call and cross-examine witnesses. *See* Defendants' Opposition, (#12), at 8:15-28. They support this reasoning by providing a declaration of Deedee Fitzpatrick, SEIU President Henry's employee and "Chief of Staff" who was sent by Henry to coerce the trusteeship vote. *See* SEIU Financial Statement 2016, attached as **Exhibit "5,"** at 38. Ms. Fitzpatrick asserts that "[a] trusteeship proceeding involves only two parties – the International President and the local union, which may by majority vote appear at the hearing to contest the trusteeship. Thus, the current or, in the case of an emergency trusteeship, former Executive Board members are the only persons entitled to notice of the hearing." *See* Defendants' Opposition, (#12), at 8:18-21. However, Defendants have provided no citation to the SEIU Constitution that supports this assertion. This

excuse fails for one glaringly obvious reason: the Local 1107 Executive Board was disbanded by SEIU President Henry, and thus relieved of all their rights and responsibilities as board members. Indeed, the "Order of Emergency Trusteeship" provides:

> Further, pursuant to Article VIII, Section 7(b) of the SEIU Constitution, I hereby remove all Local 1107 officers, Executive Board Members, trustees, and representatives from their positions as such, and all trustees of trust funds over which the Local Union has the power of appointment.

*See* Trusteeship Order, attached as **Exhibit "7"** to Plaintiffs' Motion, at 3.

Pursuant to Article VIII, Section 7(b) of the SEIU Constitution, Defendants removed all Local 1107 officers and board members from their positions at Local 1107 the Trustee, Luisa Blue, took over control and responsibility for Local 1107 and its members on that date. Because the Local 1107 executive board ceased to exist the date of the trusteeship hearing, the Trustee who took over the board's duties was required to provide notice to the Local 1107 membership of the trusteeship hearing to ensure those opposed to it would be heard and provided due process. In fact, the email sent by SEIU general counsel Alma Henderson that included the Notice of Trusteeship Hearing is addressed to "Former Officers and Executive Board Members- **and Members- of SEIU Local 1107**." *See* Trusteeship Hearing Email, attached as **Ex. 16** to Plaintiffs' Motion. The Notice of Trusteeship Hearing was intentionally drafted to ensure that the maximum number of people in favor of the trusteeship and the minimum number of those opposed would attend the hearing. Further, Richard Hodgson, a Clark County employee who is not a former member of the executive board, and who ran against Mancini in the 2016 election was obviously provided notice by SEIU as he was a witness called by the hearing officer at the hearing. *See* Trusteeship Hearing Transcript, attached as **Exhibit "6,"** at 139:1-5; *see also* Hodgson Election Slate, attached as **Exhibit "7."**

There is literally nothing about this trusteeship that has been done in accordance with the procedures outlined in the SEIU Constitution, and Defendants have provided no evidence to contradict this fact, instead requesting that this Court ignore these failures in the name of self-governance. To ignore these procedural failures would be contrary to the intent of the LMRDA to curb corruption within union leadership. Because Defendants have failed to follow their own

constitution in imposing and maintaining this trusteeship, Defendants are not entitled to the presumption of validity in 20 U.S.C. § 464. *See United Brotherhood of Carpenters & Joiners v. Brown*, 343 F.2d 872 (10th Cir. 1965) ("Congress intended for the presumption of validity to be available only where the trusteeship has been established in conformity with the procedural requirements of its (the labor organization's) constitutions and bylaws and authorized or ratified after a fair hearing . . . Since the trusteeship in this case was not established in conformity with the constitution and bylaws, the presumption is not available to appellants").

**B. <u>Whether Defendants Provided Local 1107 With A Full And Fair Hearing.</u>**

Fair hearing to authorize or ratify union trusteeship is prerequisite to validity of trusteeship. *Jolly v. Gorman*, 428 F.2d 960, 967 (5th Cir. 1970); *Retail Clerks Union v. Retail Clerks International Asso.*, 479 F.2d 54, 55 (9th Cir. 1973).

***i. Trusteeship Hearing Officer April Verrett Was Biased In Favor Of Trusteeship.***

"The LMRDA's due process guarantee includes the right to a hearing before an unbiased committee." *Knight v. Int'l Longshoremen's Ass'n*, 457 F.3d 331, 342 (3d Cir. 2006). "An unbiased or untainted finder of fact is fundamental to a full and fair hearing and procedural due process." *Savage v. Tweedy*, 2012 U.S. Dist. LEXIS 179191, *12, 2012 WL 6618184 (D. Or. Dec. 13, 2012) *citing Myers v. Affiliated Property Craftsmen Local No. 44 of Intern. Alliance of Theatrical Stage Emp. and Moving Picture Mach. Operators of U. S. and Canada*, 667 F.2d 817, 820 (9th Cir. 1982).

April Verrett is an International Board Member and political ally of SEIU President Henry who ran on Henry's election slate in 2016. *See* Henry Team, attached as **Exhibit "8."** Verrett is also currently a "Provisional Officer" of SEIU Local 2015. Local 2015 is a local union comprised entirely of long-term healthcare workers in California created by SEIU President Henry in 2015 as a direct result of a trusteeship imposed over SEIU UHW that began in 2008. *See* Order of Trusteeship UHW, attached as **Exhibit "9,"** at 2 ("Secretary Marshall also found that SEIU's actions, including initiating the trusteeship hearing and following through on a long-standing proposal to unite California long-term care workers into a single long-term care local, were taken in good faith"); *see also* SEIU Local 2015 Mission Statement, attached as **Exhibit "10,"** at 1.

Verrett is a provisional officer of SEIU Local 2015 because she was not elected to her position at Local 2015, rather, she was appointed to that leadership position by SEIU President Henry.

Prior to her appointment to the Executive Board of Local 2015, Verrett was executive vice president of SEIU Healthcare Illinois. *See* Local HCILL Financial Statement (2015), attached as **Exhibit "11,"** at 19. Verrett's salary in fiscal year 2015 at Local HCILL was $127,931. *Id.* Her current salary after her appointment to Local 2015's governing body by Henry is $169,973, which is a $42,042 raise as a direct result of her political ties to SEIU President Henry, and a trusteeship imposed over SEIU Local UHW. *See* Local 2015 Financial Statement (2016), attached as **Exhibit "12,"** at 15. International Executive Vice President Neal Bisno, who also ran on Henry's election slate and was sent to Local 1107 to coerce the trusteeship vote on April 26, 2017, received $107,174 in compensation from SEIU Headquarters and $61,580 as president of Local Healthcare Pennsylvania in fiscal year 2016. *Id. see also* Local HCPA Financial Statement (2016), attached as **Exhibit "13,"** at 15.

Appointing biased trustees and hearing officers to ensure ratification of illegal trusteeships over local affiliates is not limited to Local 1107. Laphonza Butler is an International Executive Board Vice President who ran on Henry's slate. *See* **Ex. 12,** at 15. In 2015, Laphonza Butler was President of SEIU Local 6434 and received a total salary of $97,492 from Local 6434. *See* SEIU Local 6434 Financial Statement (2015), attached as **Exhibit "14,"** at 15. That same year Butler also received a salary of $96,229 from SEIU Local 2015 giving her total compensation $193,721. *See* Local 2015 Financial Statement (2015), attached as **Exhibit "15,"** at 15. In 2016, Ms. Butler's first full year after being appointed by Henry as President of Local 2015, Ms. Butler received a salary of $232,076 as a direct result of her political relationship with President Henry and the trusteeship imposed over UHW-W. *See* **Ex. 12,** at 15. In 2017, Ms. Butler was appointed as the Trusteeship Hearing Officer to determine if the emergency trusteeship over SEIU Healthcare Michigan was proper. *See* **Ex. "3,"** at 1. Unsurprisingly, she determined the emergency trusteeship was lawful and necessary. These documents demonstrate a pattern and practice by SEIU President Henry to appoint biased hearing officers who are both financially and politically compromised by their relationship with President Henry, and cannot be reliably considered

"unbiased or untainted finder[s] of fact" when analyzing due process in these trusteeship cases. *See Tweedy*, 2012 U.S. Dist. LEXIS 179191, at 12.

***ii. Local 1107 Was Denied The Opportunity To Present Evidence And Call And Cross-Examine Witnesses.***

"A fair hearing under Section 304(c) of the LMRDA, 29 U.S.C. § 464(c), implies at least the procedural requirements of notice of the charges and of the date and nature of the hearing, presentation of evidence and witnesses in support of the reasons for imposing the trusteeship ***with the opportunity for cross-examination, and the opportunity to present evidence in rebuttal.*** *Tam v. Rutledge*, 475 F. Supp. 559, 569 (D. Haw. Aug. 20, 1979) *citing Jolly v. Gorman*, 428 F.2d 960, 967-8 (5th Cir. 1970), Cert. denied, 400 U.S. 1023, 91 S. Ct. 588, 27 L. Ed. 2d 635 (1971); *Plentty v. Laborers' International Union of No. America*, 302 F. Supp. 332 (E.D.Pa.1969). "[A] hearing at which the right of cross-examination is denied is neither a fair nor a full hearing within the meaning of 29 U.S.C. 464(c)." *International Brotherhood of Tel. Workers v. International Brotherhood of Tel. Workers*, 261 F. Supp. 433, 436, (D. Mass. 1966).

Here, after disbanding the Local 1107 Executive Board, Defendants sent notice of the trusteeship hearing to select members of former Local 1107 Executive Board at 4:20 pm on July 3, 2017, the day before the July 4th holiday, requiring the former executive board members to both notice the general membership, and convene the forty (40) former board members somewhere to secure a majority vote before July 11, to be an "official party" at the hearing able to present evidence, cross-examine witnesses, and call witnesses. *See* **Ex. "10"** of Plaintiffs' Motion, at 2-3.[2] Because of Defendants' unreasonable restrictions on the hearing and untimely notice Local 1107 was denied the opportunity to present evidence and call and cross-examine witnesses. *See generally* **Ex. "6."** Defendants can cite to no provision of the SEIU Constitution, nor any legal authority that supports their contention that "[a]ny formal appearance opposing the trusteeship involving presentation of evidence, including the calling and cross-examination of witnesses, is

[2] It should be noted that Defendants sent notice that the SEIU representatives would attend the April 26, 2017 executive board meeting the day the meeting was to be held, and that because of this short notice, only 29 of the 40 member executive were able to attend. Regardless, Defendants coerced the trusteeship vote without informing the board of the Affiliation Agreement, and only by a quorum, not the majority vote they required for Local 1107 to be provided due process.

limited to the executive board, as duly elected representatives of the local union," especially after the board was disbanded by Henry. *See* Defendants' Opposition, (#12), at 8:17-24. The unreasonable limitations on Local 1107's right to representation at the hearing resulted in a denial of due process. Defendants intentionally put these unreasonable limitations on the trusteeship hearing to ensure that Local 1107 would not be represented by a spokesperson at the hearing who would ensure they received due process. Because Local 1107 was denied due process at the ratification hearing, this Court should grant the injunction ending the trusteeship.

*iii. The Trusteeship Hearing Did Not Address Relevant Charges, Nor Establish That The Trusteeship Was Imposed For One Or More Of The Purposes Allowed Under 29 U.S.C. § 462.*

Trusteeships must be "established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship," and only for the "purpose of [1] correcting corruption or financial malpractice, [2] assuring the performance of collective bargaining agreements or other duties of a bargaining representative, [3] restoring democratic procedures, or [4] otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462. A fair hearing under Section 304(c) of the LMRDA, 29 U.S.C. § 464(c), must also "meet certain requirements of the LMRDA and of substantive due process." *Id. citing See Jolly v. Gorman*, 428 F.2d 960 (5th Cir. 1970).

> The hearing ***must be on the relevant charges of which notice has been given and not some other charges***. ***The only relevant charges are those which if established, support one or more of the purposes for a trusteeship allowed under Section 302 of the LMRDA, 29 U.S.C. § 462***. <u>***Where the hearing comes after the trusteeship, these must be the same charges that led to the prior imposition.***</u> If the trusteeship is ratified, there <u>***must be substantial credible evidence to sustain one or more of the relevant charges.***</u>

*Id.* (emphasis added.)

Defense counsel Glenn Rothner represented SEIU at the trusteeship hearing knowing full well that SEIU was being sued to invalidate the trusteeship by several 1107 members, and former board members. *See* **Ex. 6,** at 14:7-9. Rothner did not forward the Notice of Trusteeship hearing opposing counsel, and proceeded to call witnesses and present evidence at the hearing that were irrelevant to the reasons stated in Ms. Neiters' INRR. *See generally* **Ex. A** of Defendants' Motion. In fact, Hearing Officer Verrett expressly stated at the hearing that the issues raised in Neiters'

Internal Needs Report and Recommendation would not be discussed, and no evidence presented "because that subject has been addressed already in a hearing, the hearing on internal needs and discipline, and we will be presenting the Internal Needs Report of the Hearing Officer as well as the entire transcript of the two-day proceedings." *Id.* at 17:5-12.

Instead of going over the supposed basis for imposing this emergency trusteeship over Local 1107 at the trusteeship hearing as stated in the Report and Recommendation, Ms. Verrett and Mr. Rothner proceeded to call biased witnesses, and employees of Local 1107 who report directly to the trustees to testify about how great the trusteeship is going and to present other irrelevant evidence to try and retroactively find support for this illegal trusteeship. Rothner's witnesses included: Brenda Marzan, a member of the Clark County bargaining team who endorsed Mancini's opponent, Richard Hodgson (*Id.* at 21:5-9); Robert Humptman, an employee of Local 1107 hired after the trusteeship was imposed (*id.* at 100:13-20); and Martin Manteca, deputy trustee (*id.* at 111:10-13). In addition to the witnesses called by Rothner, Mancini's political rival Sheila Grain, who ran with Hodgson gave a statement, as did Hodgson himself and numerous other Clark County members who testified against Mancini in the internal charges hearing. Nothing about this hearing can be considered even remotely fair. Local 1107 was denied the opportunity to present evidence, call and cross-examine witnesses, and Verrett and Rothner wholly failed to present evidence and witnesses to support the relevant charges that led to the imposition of the emergency trusteeship, did not present substantial credible evidence to sustain any of the relevant charges. Rothner failed to present any evidence supporting the findings of the Internal Needs Report and Recommendation that was used as the basis for imposing the trusteeship. Because Defendants have failed to follow their own procedures in the SEIU Constitution, and the clear and convincing evidence that this trusteeship was not imposed for a purpose allowable under LMRDA 29 USC § 464, this Court should grant Plaintiffs' Motion for Preliminary and Permanent Injunction.

//

//

//

## IV.

## CONCLUSION

Based on the reasons stated above, Plaintiffs' request that this Court **GRANT** Plaintiffs' Motion for Preliminary and Permanent Injunction ending the trusteeship over Local 1107.

Dated this 31st day of August 2017

/s/ Michael J. Mcavoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of August, 2017, the undersigned served the foregoing **PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER ON ORDER SHORTENING TIME** on all counsel herein by causing a true copy thereof to be filed with the Clerk of Court using the CM/ECF system, which was served via electronic transmission by the Clerk of Court pursuant to local order.

CHRISTENSEN JAMES & MARTIN
EVAN L. JAMES, ESQ. (7760)
KEVIN B. ARCHIBALD, ESQ.
(13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
Email: elj@cjmlv.com,
kba@cjmlv.com
Attorneys for Defendant Service
Employees International Union

ROTHNER, SEGALL &
GREENSTONE
GLENN ROTHER (PRO HAC VICE)
JONATHAN COHEN (10551)
510 South Marengo Avenue
Pasadena, CA 91101-3115
Tel: (626) 796-7555
Facsimile: (626) 577-0214
Email: grothner@rsglabor.com,
jcohen@rsglabor.com
Attorneys for Defendant Service
Employees International Union

Dated this 31st day of August, 2017.
/s/ Michael J. Mcavoyamaya

MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*