MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * * *

CHERIE MANCINI, individually; and FREDERICK GUSTAFSON as a member, and on behalf of CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION; CLARK COUNTY PUBLIC EMPLOYEES ASSOCIATION dba NEVADA SERVICE EMPLOYEES UNION aka Local 1107, a non-profit cooperative corporation,

Plaintiff,

vs.

SERVICE EMPLOYEES INTERNATIONAL UNION, a nonprofit cooperative corporation; LUISA BLUE, in her official capacity as trustee; MARY K. HENRY, in her official capacity as Union President; DOES; and ROE CORPORATIONS 1-20, inclusive,

Defendants.

CASE NO.: 2:17-cv-02137

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONS RE: PRELIMINARY AND PERMENANT INJUNCTION ON AN ORDER SHORTENING TIME MANCINI**

COME NOW, Plaintiff CHERIE MANCINI, by and through her attorney of record, MICHAEL MCAVOYAMAYA, ESQ., and hereby submits Plaintiffs' Reply to Defendants Opposition Re: Plaintiffs' Motion for Preliminary and Permanent Injunction.

Dated this 31st day of August, 2017.

/s/ Michael J. Mcavaoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, Nevada 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## LEGAL ARGUMENT

Defendants' Opposition to Mancini's Motion for Preliminary and Permanent Injunction, like their Opposition to Plaintiffs' Motion requesting this Court enjoin the trusteeship, is an attempt to misdirect the Court's focus on the issues relevant to Plaintiffs' Motion for Preliminary Injunction. Defendants unconvincingly argue that the only thing required when disciplining a union member is due process at a full and fair hearing. This, of course, in completely contrary to the LMRDA's bill of rights contained in 29 U.S.C. § 411. As such, Plaintiff Mancini will address the issues relevant to examine if an injunction is warranted. This Court must determine two overarching issues when determining whether an injunction is proper under the circumstances in this case: (1) whether Mancini was provided due process at a full and fair hearing; and (2) whether SEIU disciplined Mancini in part for engaging in protected speech.

### A. Did Defendants Provide Mancini With Due Process At A Full And Fair Hearing?

"The LMRDA's due process guarantee includes the right to a hearing before an unbiased committee." *Knight v. Int'l Longshoremen's Ass'n,* 457 F.3d 331, 342 (3d Cir. 2006). LMRDA Title I, § 101, 29 U.S.C. § 411(5) provides that: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(5). "Any person whose rights secured by the provisions of this title [29 USCS §§ 411 et seq.] have been infringed by any violation of this title [29 USCS §§ 411 et seq.] may bring a civil action in a district court of the United States for such relief (**including injunctions**) as may be appropriate." 29 U.S.C. § 412 (emphasis added.)

#### *i. Plaintiff Mancini Can Challenge Her Discipline Because It Affects Her Membership Rights.*

The LMRDA does not provide a cause of action for removal of a union officer, unless the disciplinary action affects the officer's membership rights. *USW Local 12-369 v. USW Int'l*, 728 F.3d 1107, 1117 (9th Cir. 2013). "[U]nion officers, like union members are protected by the

LMRDA against discipline that affects their rights as union members." *Snyder v. Freight, Constr., Gen. Drivers, Warehousemen & Helpers, Local No. 287*, 175 F.3d 680, 686 (9th Cir. 1999).

Defendants cite to *USW* for the presumption that Mancini cannot obtain an injunction restoring her to the position of president because the LMRDA "only protects union members against a loss of membership rights" and "does not protect union members in their official capacities." *See* Defendants' Opposition, (#13), at 12:14-25. However, Defendants ignore the holding in *UHW*, which clearly stated that "[b]ecause the alleged retaliatory actions directed toward Green impinged **only** upon her status as a union officer, she may not seek redress for these actions." *USW Local 12-369 v. USW Int'l*, 728 F.3d 1107, 1117 (9th Cir. 2013). Union officers can, and have successfully sued for reinstatement of their membership and positions as election officers when disciplinary actions taken by the union affect both the member's status as an officer and their membership rights. *Grand Lodge of International Asso. of Machinists v. King*, 335 F.2d 340, 344 (9th 1964) ("We think it follows that plaintiffs' complaint for reinstatement and damages was sufficient to withstand dismissal for failure to state a claim upon which relief could be granted"); *Gabauer v. Woodcock*, 520 F.2d 1084, 1093 (8th Cir. 1975) ("the cases are virtually unanimous that § 101(a)(5) does not apply to removal or suspension, even when done summarily, from union office ***unless union membership rights are denied***"); *see also Martire v. Laborers' Local 1058*, 410 F.2d 32, 35 (3d Cir. 1968); *International Ass'n. of Machinists v. King*, 335 F.2d 340, 342-43 (9th Cir. 1964); *Airline Stewards v. Transport Workers,* 334 F.2d 805, 808-09 (7th Cir. 1964).

Here, it is undisputed that Mancini's discipline by SEIU included both her removal from elected office and suspension of her membership rights. As such, unlike *USW*, the disciplinary actions in this case affected both Mancini's status as an elected official and her rights as a member. Thus, challenging the disciplinary proceedings to restore her membership cannot be separated from her status as a member, and if the disciplinary process used by SEIU violated the LMRDA, the restoration of her membership would also, as sort of a logical axiom, result in her reinstatement as Local 1107 President because the Court will be determining if SEIU's discipline violated the

LMRDA. Had Defendants not suspended Mancini's membership, she would have no cause of action to challenge the disciplinary proceedings that only affected her status as an officer.

*ii. Notice of Specific Charges*

Defendants assert that because the charges alleged by Brenda Marzan and Sharon Kisling asserted the facts they believed supported disciplinary charges against Mancini, their failure to properly allege that conduct under the sections of the SEIU and Local Constitutions Mancini was eventually disciplined under should be overlooked. To interpret the LMRDA this way would render any challenge to disciplinary proceedings unchallengeable under the LMRDA. All a union would have to do is write a facts section including various questionable conduct and recite the disciplinary hearing sections of the constitution, and then at the hearing fit the conduct to whatever section they want to in order to support discipline. Such a result would be clearly unreasonable.

Here, it is indisputable that Neiters recommended that Mancini be removed from office and suspended from membership with SEIU "for her disloyal and conduct unbecoming an officer in violation of Article 21, Section 3[3]." *See* ICRR, attached as **Exhibit "5"** to Plaintiffs' Motion, at 16. Neiters was very specific in her report that Mancini's suspension of the ratification vote and failure to participate in the UMC bargaining process "could nonetheless be seen as genuine . . . and may not warrant serious discipline." *Id.* at 15. Neiters was also clear that the sustained charges for violation of Article 8, Section 2(c) of the Local 1107 Constitution warranted only "reprimand and . . . leadership development training." *Id.* at 26. Because Neiters determined that Mancini's failure to participate in the bargaining process and cooperate with the board didn't warrant removal from office, these charges are irrelevant to her discipline. What Neiters did find warranted the discipline she received was that "Sister Mancini made a very public announcement – without any explanation or evident justification – that the bargaining committee had violated its fiduciary duty to the members." *Id.* at 16. This was found to be a violation of Article 21, Section (3) of the Local Constitution. This section was not included in any of the charges filed against Mancini, and if they were, she would have been able to prepare a free speech defense to the charge. Further, there is no charge of "conduct unbecoming an officer" in either constitution, evidencing a misapplication of the charge by Neiters.

Defendants point out that "Plaintiff admits, the LMRDA does not require that charges include the particular provision of a union constitution alleged to have been violated," and thus the charges were sufficiently specific. *See* Defendants' Opposition, (#13), at 13:2-14. What they fail to acknowledge is that it is Article XVII Section 2 of the SEIU Constitution that imposes that requirement on the charging party: "The charges ***must specify*** ***the events or acts which the charging party believes constitute a basis for charges and*** ***must state which subsection(s) of Section 1*** ***of this Article the charging party believes has been violated***." *See* SEIU Constitution, attached as **Exhibit "7"** to Plaintiffs' Motion, at 37 (emphasis added.) As such, the charges were not sufficiently specific to permit her to effectively prepare a defense.

*iii. Mancini Was Not Provided Due Process.*

"The LMRDA's due process guarantee includes the right to a hearing before an unbiased committee." *Knight v. Int'l Longshoremen's Ass'n*, 457 F.3d 331, 342 (3d Cir. 2006). "A fair hearing under Section 304(c) of the LMRDA, 29 U.S.C. § 464(c), implies at least the procedural requirements of notice of the charges and of the date and nature of the hearing, presentation of evidence and witnesses in support of the reasons for imposing the trusteeship ***with the opportunity for cross-examination, and the opportunity to present evidence in rebuttal.*** *Tam v. Rutledge*, 475 F. Supp. 559, 569 (D. Haw. Aug. 20, 1979) *citing Jolly v. Gorman*, 428 F.2d 960, 967-8 (5th Cir. 1970), Cert. denied, 400 U.S. 1023, 91 S. Ct. 588, 27 L. Ed. 2d 635 (1971); *Plentty v. Laborers' International Union of No. America*, 302 F. Supp. 332 (E.D.Pa.1969). "[A] hearing at which the right of cross-examination is denied is neither a fair nor a full hearing within the meaning of 29 U.S.C. 464(c)." *International Brotherhood of Tel. Workers v. International Brotherhood of Tel. Workers*, 261 F. Supp. 433, 436, (D. Mass. 1966).

Defendants argue that because Mancini was provided due process the charges should stand. However, nothing about the October hearings demonstrate that due process was afforded to Mancini. First, Defendants argue that there was evidence presented at the hearing that Mancini failed to perform her very important duty to participate in the UMC collective bargaining process. *See* Defendants' Opposition, (#13), at 17:21-23. The problem is that the only evidence of this was the testimony of the UMC bargaining team members who attended the hearing and were angry

that Mancini initiated an investigation against them. What defense counsel fails to apprise this Court of, and is not mentioned in Neiters' report, is that several members of UMC, including one bargaining team member, testified at the hearing in support of Mancini. Michael Collins, a UMC registered nurse and member of the UMC bargaining team testified at the Internal Needs hearing:

> I DO NOT THINK IT WOULD BE GOOD FOR OUR LOCAL TO BE TRUSTEED AT THIS TIME. I'M HERE TO SUPPORT ALL OF SEIU LOCAL 1107, AND I STAND HERE TO AFFIRM THAT CHERIE MANCINI IS THE ELECTED PRESIDENT OF OUR LOCAL AND SHOULD REMAIN IN THAT POSITION. I WAS A MEMBER OF THE BARGAINING TEAM FOR UNIVERSITY MEDICAL CENTER DURING THIS LAST CONTRACT NEGOTIATION, AND I HAD A DIFFERENT EXPERIENCE THAN THE OTHER BARGAINING TEAM MEMBERS.
>
> WHAT OCCURRED WAS THAT CHERIE MANCINI WAS BLOCKED FROM RECEIVING INFORMATION FROM OUR BARGAINING PROCESS. AND WHEN SHE SENT STAFF THAT THE BARGAINING TEAM MEMBERS WERE NOT FAMILIAR WITH, THE STAFF WAS ASKED TO LEAVE. SO DURING THE CONTRACT NEGOTIATIONS, I WAS STILL A TRUSTEE. AND I WAS VERY AWARE OF THE ATTEMPTS THAT PRESIDENT MANCINI MADE TO PARTICIPATE IN OUR PROCESS. AND AGAIN SHE WAS BLOCKED.
>
> THE HEARING OFFICER: CAN YOU GIVE ME EXAMPLES OF WHAT THAT WAS, MICHAEL, OR EVIDENCE OF IT?
>
> MR. COLLINS: EVERY WEEK, DURING THE CONTRACT NEGOTIATIONS, I HAD CONVERSATIONS WITH CHERIE MANCINI. BECAUSE THE MEMBERSHIP WANTED TO KNOW WHAT WAS GOING ON IN THE PROCESS. SHE TOLD ME THAT SHE HAD CONTACTED PAT GREAUX, WHO WAS TAKING THE LEADERSHIP ROLE IN THAT PROCESS. AND PAT WAS NOT PROVIDING HER ANY INFORMATION. WE HAD AN ORGANIZER FROM THE HALL THAT HAD BEEN ASSIGNED OTHER DUTIES. WHEN A NEW ORGANIZER WAS BROUGHT IN TO OBSERVE THE PROCESS, SHE WAS TOLD TO LEAVE. WHEN PRESIDENT MANCINI HERSELF CAME TO THE BARGAINING PROCESS, SHE WAS ASSURED THAT EVERYTHING WAS GOING ALONG IN AN ACCEPTABLE MANNER. SHE WAS FINALLY GIVEN A COPY OF THE DOCUMENTATION OF WHAT HAD TAKEN PLACE TO THAT DATE. AND SHE LEFT.
>
> AFTER THE NEGOTIATIONS WERE COMPLETED, NOBODY, INCLUDING THE BARGAINING TEAM, HAD ACCESS TO WHAT WE HAD BARGAINED. AND SOMEHOW OR ANOTHER, THE MEMBERSHIP GOT AHOLD OF A DOCUMENT THAT STARTED TO CIRCULATE THAT

> ROUGHLY WAS A CLEAR REPRESENTATION OF WHAT WE HAD BARGAINED. I WAS CONTACTED, I BELIEVE IT WAS JULY THE 28TH, BY THE THEN VICE PRESIDENT GWEN STEVENS AND ASKED TO FAX THAT INFORMATION TO CHERIE MANCINI. WHEN CHERIE MANCINI SAW IN THE DOCUMENT THAT WAS TO BECOME OUR RATIFIED CONTRACT THAT A PROVISION WAS PUT INTO THE CONTRACT THAT NO MEMBER FROM THE SEIU LOCAL COULD ACCESS UMC WITHOUT FIRST GIVING 24 HOURS' NOTICE TO THE CHIEF STEWARDS AT UMC AND TO HR, SHE BEGAN TO VOICE SOME SERIOUS CONCERNS ABOUT THAT.

*See* Internal Needs Transcript, attached as **Exhibit "1,"** at 52:2-28 – 53:1-19.

Alfredo Serrano was also in attendance at the internal needs hearing and pointed out to Hearing Officer Neiters that:

> THERE IS A LOT OF THE MAJORITY OF THE PEOPLE SPEAKING AGAINST CHERIE MANCINI AND ASKING FOR TRUSTEESHIP ARE OF THAT BARGAINING TEAM. THE NOTICE THAT WENT OUT FROM CHERIE MANCINI REGARDING THAT HAS OFFENDED THE BARGAINING TEAM. IF CHERIE -- IN MY OPINION, IF CHERIE FELT THAT THERE WAS CONCERNS WITH THE BARGAINING, IT WAS HER RESPONSIBILITY TO HOLD THAT ELECTION AND MAKE SURE THAT THEY INVESTIGATE THOSE CONCERNS BEFORE THE ELECTION GOES ON. BECAUSE ONCE THE ELECTION GOES ON AND THE MEMBERS VOTE TO ACCEPT THE BARGAINING TEAM'S CONTRACT, THEN THERE IS NO GOING BACK ON IT.

*Id.* at 55:17-28.

While Mr. Serrano was correct to point out the bias of those who testified against Mancini, he was incorrect in his assertion that there was no going back on the provisions of the contract. After the ratification vote, Mancini filed a Complaint with the Nevada Employee Relations Board challenging the limitation on the union's access to members at the worksite. *See* NELRB Complaint, attached as **Exhibit "2,"** at 1. The trustees, Luisa Blue and Martin Manteca, have negotiated out the exact provision that Mancini objected to and suspended the ratification vote for because it violates Nevada law. *See* Notice of Settlement and Dismissal, attached as **Exhibit "3,"** at 1. This provision is precisely the same provision that Neiters' ICRR addresses: "[a]s a union leader, I am enormously sympathetic to Sister Mancini's concern. Access is a vital issue for unions. I can appreciate her strong reaction in access her bargaining committee members accepted,

even if they were well-intended." *See* **Ex. 4** of Plaintiffs' Motion, at 15. The supposed justification for removing Mancini from office and suspension of her membership was her alleged lack of participation in the bargaining process and baseless allegations against the UMC bargaining team. However, Mancini was actually being blocked by the UMC bargaining team members led by Ms. Greaux, who testified at the internal needs hearing and trusteeship hearing, and the exact reason she suspended the vote and alleged misconduct by the bargaining team was in fact correct, and subsequently negotiated out of the CBA by the trustees.

This is only the beginning of why these charges were frivolous and maliciously encouraged by President Henry. Mary Grillo is a regional director and employee of SEIU Headquarters. *See* SEIU Headquarters Financial Statements (2016), attached as **Exhibit "4,"** at 42. Ms. Grillo and Steve Ury, SEIU's general counsel, were sent by President Henry to Local 1107 before any charges were filed against any member officers, and had been attending board meetings. Ms. Kisling, at the direction of Mr. Ury and Ms. Grillo, requested Michael Urban, Local 1107's attorney whose contract was not renewed by Local 1107 once Mancini became president, to write an investigative report into the charges against Mancini suggested by Grillo and Ury. *See* Kisling Email, 9/1/16, attached as **Exhibit "5,"** at 1. This email chain shows that the charges against Mancini were being promoted by two SEIU International representatives who were sent to Local 1107 by President Henry personally.

Unfortunately, at this time, Plaintiff Mancini cannot cite to the violations in the internal charges hearing transcript because defense counsel has refused to turn it over, arguing that it is not relevant to the proceedings in *Garcia v. SEIU*, despite Hearing Officer Neiters citing to the transcript five times in the INRR that was the basis for imposition of this trusteeship.

Defendants also highlight that "Plaintiff next argues that the July 26, 2016 letter regarding an investigation of the bargaining committee was an act of good faith assertedly based on allegations made by the nursing staff members of UMC, and did not originate with Mancini. Rather than provide any direct evidence regarding the motivation of her actions (or citation to any such evidence presented at the hearing), Plaintiff relies on two documents that appear to post-date Mancini's ratification conduct and thus could not have motivated it." *See* Defendants' Opposition,

(#13), at 18:6-11. The reason for this is that Defendants were the ones in possession of that evidence, the hearing transcripts. Veronica Dunn-Jones, a UMC nurse testified at the internal needs hearing that "there was several people, including a lot of the nurses, who wanted to know when the contract came out, 'what are we voting for? What exactly are we voting for?' and it wasn't until the e-mail came out to stop that. We actually had a hall meeting with cherie mancini to say, 'hey, this is what you're voting for. This is what's in the contract.'" *See* **Ex. 1,** at 43:20-26.

The fact is that the evidence presented at the October hearing does not support removal of President Mancini. Rather, it demonstrates that Hearing Officer Neiters, a SEIU International Executive Board Vice President, was biased against Mancini and was likely directed, like Ms. Grill and Mr. Ury to sustain the charges and recommend trusteeship. This is evidenced by the complete lack of reference of this highly relevant testimony in her report. The evidence presented at the hearing shows that Mancini's actions were at the request of UMC members, and that despite her strong efforts to meet that "very important duty" to participate the UMC collective bargaining, the UMC bargaining team was preventing her from doing so.

*iv. Mancini Was Disciplined For Engaging In Protected Free Speech On Behalf Of Members.*

Based on the internal needs hearing transcript, it is abundantly clear that UMC members had requested that Mancini intervene in the UMC CBA and suspend the ratification vote because the UMC bargaining team was negotiating an illegal access provision into the CBA and refusing to be transparent with the membership. Contrary to Defendants' arguments, suspending a ratification vote is not "conduct that would interfere with [the union's] performance of its legal or contractual obligations." *See* Defendants' Opposition, at 20:17-22. Rather, it was the UMC collective bargaining team that was failing to cooperate with the recently elected president and failing to be transparent with its members, resulting in Mancini suspending the ratification vote. None of the case law cited by Defendants stands for the presumption that Mancini's status as an officer curtails her free speech rights, and because she was speaking on behalf of UMC members, her discipline and suspension from membership poses a grave risk of suppressing the free speech of Local 1107 members. As such, on this basis alone, the Court should grant Plaintiff Mancini's

request for injunction immediately reinstating her membership and position as Local 1107 President.

## IV.

## CONCLUSION

Based on the reasons stated above, Plaintiffs' request that this Court **GRANT** Plaintiffs' Motion for Preliminary and Permanent Injunction reinstating Plaintiff Mancini's membership and position as Local 1107 President.

Dated this 31st day of August 2017

/s/ Michael J. Mcavoyamaya

MICHAEL J. MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 31st day of August, 2017, the undersigned served the foregoing **PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER ON ORDER SHORTENING TIME** on all counsel herein by causing a true copy thereof to be filed with the Clerk of Court using the CM/ECF system, which was served via electronic transmission by the Clerk of Court pursuant to local order.

CHRISTENSEN JAMES & MARTIN
EVAN L. JAMES, ESQ. (7760)
KEVIN B. ARCHIBALD, ESQ. (13817)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 255-1718
Facsimile: (702) 255-0871
Email: elj@cjmlv.com, kba@cjmlv.com
Attorneys for Defendant Service Employees International Union

ROTHNER, SEGALL & GREENSTONE
GLENN ROTHER (PRO HAC VICE)
JONATHAN COHEN (10551)
510 South Marengo Avenue
Pasadena, CA 91101-3115
Tel: (626) 796-7555
Facsimile: (626) 577-0214
Email: grothner@rsglabor.com, jcohen@rsglabor.com
Attorneys for Defendant Service Employees International Union

Dated this 31st day of August, 2017.
/s/ Michael J. Mcavoyamaya

MICHAEL MCAVOYAMAYA, ESQ.
Nevada Bar No.: 14082
4539 Paseo Del Ray
Las Vegas, NV, 89121
Telephone: (702) 299-5083
Michael.mcavoyamaya@gmail.com
*Attorney for Plaintiffs*